## BLUNT vs. WALKER, et al.

### APPEAL FROM CIRCUIT COURT, ROCK COUNTY

Heard March 21st.] [Decided July 10, 1860.

*Corporations—Stock—Mortgages—Promissory Notes.*

Corporations may receive securities for their debts created in the usual course of their business, in the same manner as natural persons, unless there be some provision to the contrary in their charters.

The provision of the charter of the Milwaukee and Mississippi R. R. Co., that the the corportion should not, in their corporate capacity, *hold, purchase or deal in* any lands within this state, other than the lands on which said road shall run, or which might be actually necessary for the construction or maintainance thereof, and of the warehouses, machine shops, and other fixtures connected therewith, was intended to prohibit the corporation from purchasing, &c., lands directly, and in a manner unconnected with the lawful and proper management and control of its business, but not to prevent its acquiring an interest therein incidentally, whenever, in the proper exercise of its powers it became necessary for it to do so, in order to protect its legal rights ; *and it may transmit the title* thereto.

The taking of a mortgage to secure the payment of a debt due to a corporation, cannot be considered a dealing in lands.

A mortgage for all the purposes of negotiation and trade, is regarded as mere personalty. It is not considered a conveyance of land, but a charge which attaches itself to the debt and follows its destinies and ownership.

Though a corporation may not be empowered to deal in real estate, yet it may acquire and transmit a title to lands, as an incident to its power to make general contracts touching a particular business.

A subscription for the stock of a corporation is a contract with the corporation, and courts of justice will enforce it for or against either party.

When a corporation has the power to make a contract, and is not restricted in the

Blunt vs. Walker et al.

manner of doing so, as to such contract, it stands on the same footing as a natural person, and may adopt any mode calculated to accomplish it, which the individual could.

Where the charter of a corporation conferred upon the directors the power to decide the time, manner and proportions in which the stockholders should pay for their shares of stock, it puts the whole matter in the hands of the directors, and they may take a note fixing the same.

The giving and receiving a promissory note is not an extinguishment of the original contract, nor does it change its nature, unless it be expressly so agreed. The payment is only suspended for the time being.

Although a corporation have not power to make a note for its own debt, yet it may receive one from a natural person, who has that power, and it will be good in the hands of an innocent holder to whom it has been legitimately transferred.

*Burns vs. Dodge,* 9 Wis., 458, and *Sherwood vs. Rock River Bank,* 10 id., 230, considered and approved.

This action was originally commenced by Charles Blunt, against Wiram Knowlton and his wife, the Milwaukee and Mississippi railroad company, and Gilbert Hurd. The complaint attached to the summons for relief set forth that on the 18th of May, 1858, Knowlton and wife made the note and mortgage to secure the payment of $675, payable in eight months at 12 per cent. interest, covering certain tracts of land in Prairie du Chien. Hurd was declared against as a subsequent incumbrancer. The complaint set forth that on the 26th of February, 1855, Knowlton made a mortgage upon the same land to the railroad company which was claimed to be illegal, fraudulent and void for all purposes, and especially as to the creditors of Knowlton, because it was obtained by false and fraudulent representations of the officers and agents of the company, and because there was no valuable consideration for the mortgage, and because the company had no authority or power to take or receive the mortgage, nor was the taking or receiving of the same among the rights or powers vested in, or conferred upon the company; nor were they necessary or proper to enable the company to carry into effect, or exercise the rights, privileges or franchises conferred upon it; nor was it taken in the usual course of business, or prosecution of their work, nor to secure any debt due or to become due from Knowlton to the company, but was taken for purposes outside of the scope of the business of the company. The demand for judgment was in the usual form for foreclosure. Subsequently the summons

and complaint were amended by making George H. Walker a party defendant.

Hurd made no answer. The railroad company disclaimed any interest in the matter. Walker answered, and set up, that on the 26th of February, 1855, Knowlton had made his promissory note whereby, for value received, he promised to pay the Milwaukee & Mississippi railroad company, the sum of $3000 in ten years from the first of September, 1854, with interest at 8 per cent., and that to secure the payment of the principal sum and interest mentioned in the note, Knowlton executed and delivered to the company, under his hand and seal a mortgage on real estate, whereby he mortgaged in fee simple all the lands described in the complaint with others to the company, that the mortgage was duly signed, sealed and recorded. That the note and mortgage from Knowlton to the company were assigned to him, Walker for a valuable consideration; and that he was now the legal owner and holder thereof, and therefore that the same were a valid and prior lien upon the lands described in the mortgage to the plaintiff. He further set up that the interest was due and unpaid, and the principal was unpaid. He also denied the averments of fraud in the procurement of the note and mortgage, and insisted upon the authority of the company to take the same, thus putting that portion of the complaint at issue, and concluded with a prayer that his lien might be declared prior, and that the land might be sold, and his mortgage and note discharged first.

The defendant Knowlton answered admitting the making of the note and mortgage to Blunt, and the failure to pay the same. He also admitted the making of the note and mortgage to the railroad, and that the same was now held by the defendant Walker by assignment from the railroad company. He then answered as follows:

"But this defendant further answering says, that while he admits as a fact, the execution and delivery of said note and mortgage to said railroad company, he denies the validity and binding force of the same in law; and by way of defence to the same, and of laying a foundation for the affirmative relief in the premises against the said defendants, the Milwaukee and Mississippi Railroad Company and George H. Walker hereinafter prayed, this defendant shows and says, that the said note and mortgage were executed and delivered in payment of, for and in consideration of thirty shares of one hun-

dred dollars each, of the capital stock of said railroad com-
pany, and for no other or different consideration; and this
defendant alleges, and objects, and now submits to this court
as a question of law, that the said transaction by the said
railroad company, in disposing of its capital stock in consid-
eration of the note and mortgage, of this defendant as afore-
said, was in violation of its act of incorporation, and was,
and is, as to this defendant, contrary to law and void; and
that the said note and mortgage were executed and delivered
without any sufficient legal consideration, and are illegal, con-
trary to public policy and void.

" Therefore, this defendant prays for the following affirma-
tive relief against the said defendants, George H. Walker and
the Milwaukee and Mississippi Railroad Company; that is to
say, that the said note and mortgage to the said railroad com-
pany may be adjudged to be null and void, and the said
George H. Walker, the present holder and owner of the said
note and mortgage, may be ordered and adjudged to deliver
up the said note and mortgage to be cancelled, and that this
defendant may have such other and further relief in the
premises, as to this court may seem just and proper in the
premises."

After the cause was at issue, a change of the venue was
agreed upon from Crawford to Rock county, and the plaintiff
dying, the suit was prosecuted by his widow and testatrix.
On the trial the plaintiff read in evidence the note and mort-
gage of Knowlton, and also called Knowlton to the stand as
a witness, who testified as follows:

" That on the 26th day of February, 1855, he executed a
note and mortgage to the Milwaukee and Mississippi Rail-
road Company, upon certain real estate, situated in the coun-
ty of Crawford and state of Wisconsin, being upon the same
land described in the mortgage to the plaintiff, together with
certain other lands; which note is given below, at the close
of Knowlton's evidence. Which note and mortgage to the
said railroad company was given to, and received by said
company, in payment of a subscription by him, Knowlton,
to the amount of thirty shares to the capital stock of said
railroad company. At the time of the execution and delivery
of the said note and mortgage to the said company, I re-
ceived nothing therefor; but the said railroad company, by
their agent, promised to issue to me a stock certificate of full
paid stock, negotiable and transferrable in the usual form, for

thirty shares of one hundred dollars each, of the capital stock of said company, which was the sole and only consideration for the said note and mortgage. That on the 11th day of February, 1857, the said company issued a certificate of stock, a copy of which is also given below, which certificate of stock I declined to receive up to the time of the commencement of this action; since which time, and within about three weeks last past, I received the said certificate under protest from the said company. I was not indebted to said company at the time of the execution of said note and mortgage. This note and mortgage were given in payment of the said stock subscription heretofore mentioned.

"The lands thus mortgaged to the said company were from three-fourths of a mile to eight miles from the route or depot or other grounds of the said railroad company, and were not taken or intended to be used or occupied for any of the purposes of the said railroad. That at the time of the taking of the said note and mortgage by the said railroad company, it was represented by the agent of the railroad company, by whom the same was obtained, that the said note and mortgage were taken for the purpose of negotiating them to procure funds to build the railroad, and that the same should only be negotiated as collateral to the bonds of the company, and in such a manner that the entire property of the company should be exhausted before the mortgage could be resorted to.

" *Upon cross examination,* he said, I subscribed at the time of the execution of the note and mortgage to the said M. & M. R. R., Company, for the amount of fifty shares of the capital stock of the said railroad company. The said note and mortgage were given in payment of thirty shares of said stock.

The note reads as follows:

" Know all men by these presents, that Wiram Knowlton, of Prairie du Chien, county of Crawford, and state of Wisconsin, being justly indebted to the Milwaukee and Mississippi Railroad Company, in the sum of three thousand dollars, lawful money of the United States of America, for full value received, does, in consideration thereof, hereby promise to pay the said Milwaukee and Mississippi Railroad Company, or order, the sum of three thousand dollars at the expiration of ten years, from the first day of September, in the

year of our Lord one thousand eight hundred and fifty-four, together with interest thereon, at the rate of eight per cent. per annum, payable annually on the first day of September in each year after the date hereof. Principal and interest, payable at the office of said company, in the city of Milwaukee. In witness whereof, I have hereunto set my hand, this twenty-sixth day of February, in the year of our Lord one thousand eight hundred and fifty-five. Signed,

WIRAM KNOWLTON."

The mortgage was in the usual form, referring to this note, and covered three tracts not included in the mortgage to the plaintiff, and was duly recorded, April 24, 1855.

The witness, Knowlton identified the following papers, and they were put in evidence by the plaintiff.

"Whereas, Wiram Knowlton has executed a note and mortgage in favor of the Milwaukee and Mississippi Railroad Company, bearing date the twenty-sixth day of February, A. D., 1855, payable in ten years from the 1st day of September, A. D., 1854, for the sum of three thousand dollars, with interest, annually, at the rate of eight per cent. per annum, from and after the first day of September, A. D., 1854. And whereas, said note and mortgage have been received in payment of thirty shares of the capital stock of said company:

" Now, therefore, in consideration of the relinquishment and assignment by the said Wiram Knowlton to the said company of so much of the dividends on said stock, which he may become entitled to as shall be sufficient to pay the interest on said note; the said company agree not to demand said interest from him, and in case said note and mortgage shall be negotiated by said company, then said company agree to save him harmless from said interest; and said company further agree to pay the said Wiram Knowlton interest at the rate of two per cent. per annum on said sum, until said road shall be completed to Prairie du Chien.

" And the said Wiram Knowlton hereby assigns to the said company, so much of any dividends to which he may become entitled on the said shares, as shall be sufficient to pay off said interest, and agrees to pay said principal sum when the same shall become due.

" And it is further understood, that this agreement of the said company to relinquish the said interest, or to secure the

said Wiram Knowlton harmless therefrom, shall not be a de-
fense on his part against the payment of said interest, if said
note and mortgage shall be in the hands of a third party, as
security or otherwise, nevertheless the said railroad company
agrees to pay said interest promptly.

"In witness whereof, the board of directors of said com-
pany have caused these presents to be signed by their duly
constituted agent, and the said Wiram Knowlton has also set
his hand and seal, this 26th day of February, A. D. 1855.

        "(Signed,)          E. D. CLINTON, Agent.
        "(Signed,)          WIRAM KNOWLTON.

UNITED STATES OF AMERICA, STATE OF WISCONSIN.

$3,000.     Milwaukee & Mississippi Railroad Co.     No. 45.

Know all men by these presents, that the Milwaukee and
Mississippi Railroad Company is justly indebted and promis-
es to pay to          or bearer, three thousand dollars, on the
first day of September, 1864, at the American Exchange
Bank in the city of New York, together with interest thereon
at the rate of eight per cent. per annum, payable on each first
day of March and September, semi-annually, on the present-
ation and surrender of the annexed coupons at the said bank.
To the payment whereof the said company hereby bind them-
selves firmly by these presents, and for the better securing of
such payments being made to the holder hereof, the said
company have assigned and transferred, and by these pres-
ents do assign and transfer, to the said holder of this bond, a
certain note for the sum of three thousand dollars, executed
by Wiram Knowlton, together with a mortgage given collate-
ral to, and for the purpose of securing the payment of the
same, dated on the twenty-sixth day of February, 1855, pay-
able in ten years, with interest at the rate of eight per cent.
per annum, which said note and mortgage are hereto append-
ed, and are transferrable in connection with this bond, to any
parties or purchasers whomsoever, and not otherwise; and
the said company do hereby authorize and empower the
holder of this bond, at any time, in case said company shall
fail to perform any of the foregoing stipulations, by neglect-
ing to pay either principal or interest on this bond, when the
same shall become due, to proceed and foreclose the said
mortgage, or take such other legal remedy on said note and
mortgage, against said mortgagor, or against this company, on

this present bond, or on both, as shall seem proper and expedient to said holder thereof.

In testimony whereof, the said company have, &c. Sealed and signed by the president and secretary of the company.

"No. 202.    STOCK CERTIFICATE.    30 Shares.

"MILWAUKEE, Wis., Feb. 11, 1857.

" This is to certify, that Wiram Knowlton, of Prairie du Chien, is entitled to thirty shares of one hundred dollars each, in the capital stock of the Milwaukee and Mississippi Railroad Company, which have been fully paid by a mortgage upon real estate.

" The stock is subject to a reservation of eight per cent. per annum, in favor of the company, out of any earnings or dividends which may be declared in favor of the holder hereof, and also of the amount of all taxes paid by this company upon said mortgaged lands, in consequence of the neglect of the mortgagor or his assigns, to pay such taxes, until the final payment of the principal sum of said mortgage; and in case the mortgagor or his assigns fails to pay all taxes levied or assessed on the mortgaged premises, or in case the title thereto shall fail, or in case the said mortgage shall not be fully paid at maturity, the company, at its option, on cancelling and surrendering the said mortgage, may declare this certificate forfeited and void. And the holder hereof will not receive any dividends until the payment of said mortgage; but the dividends to be credited and the interest on the mortgage debited to the said mortgagor or his assigns. It is therefore, not assignable, except it be subject to the above reservations. This stock draws to the holder thereof, ten per centum per annum, until the said road is completed to Prairie du Chien.

" (Signed,)    GEORGE H. WALKER,
" (Signed,)    WM. TAINTOR,    Vice President.
" Secretary."

(Copy of Endorsement on the above.)

" COPIED CERTIFICATE.

" For value received,    hereby transfer to
of    the    shares of stock embraced in the within certificate, subject to the conditions and reservations therein specified.

" Dated this    day of    , 185 ..
" (Signed,)    WIRAM KNOWLTON."

Upon this evidence the judgment of the circuit court was entered, declaring the mortgage to the railroad company void, and no incumbrance upon the real estate, and that it be cancelled; and that the plaintiff's mortgage was prior to that of the defendant, Walker, and ordered a sale of the premises to satisfy the plaintiff's mortgage.

From that judgment Walker took this appeal.

*D. H. Johnson*, for the appellant, upon the point that the note and mortgage could be given to the company for its stock, cited the charter of the company, §§ 2, 5, 19; *Illinois Riv. R. R. Co. vs. Zimmer*, 20 Ill., 654; *Vermont Cent. R. R. Co. vs. Clayes*, 21 Vt., 30; *Union Turnpike Co. vs. Jenkins*, 1 Cai., 381; id., 1 Cai. Ca., 86; *Wilwarth vs. Crawford*, 10 Wend., 341; Ang. & A. on Corp., § 517, and numerous cases cited in note 1; *Hartford & New Haven R. R. Co. vs. Kennedy*, 12 Conn., 599; *Essex Bridge Co. vs. Tuttle*, 2 Vt., 393; *Mann vs. Cook*, 20 Conn., 178; *Danbury & Nor. R. R. Co. vs. Wilson*, 22 Conn., 435; *Troy & B. R. R. Co., vs. Tibbits*, 18 Barb., 297; *Palmer vs. Lawrence*, 3 Sand. Sup. Ct., 161; Redfield on Railways, and cases cited, p 72, note 1; *Chester Glass Co. vs. Dewey*, 16 Mass., 94; *Hagerstown Plankroad Co. vs. Creger*, 5 Har. & John., 122.

In answer to the objection that the company was expressly interdicted from holding, purchasing or dealing in any lands, &c., he cited, *The Madison, &c., Plankroad Co. vs. Watertown Plankroad Co.*, 5 Wis., 173; id., 7 id., 59; Ang. & A. on Corp., § 156; *Trenton Banking Co. vs. Woodruff et al.*, 1 Green's Ch., 117; *Silver Lake Bank vs. North*, 4 J. C. R., 370; *Farmer's Loan & Trust Co. vs. Clawes*, 3 Comst., 471; *Leazure vs. Hilegas*, 7 S & R., 313; *Baird vs. Bank of Washington*, 11 id., 411; *Burns vs. Milwaukee & Miss. R. R. Co.*, 9 Wis., 450, and cases cited by the court.

*I. P. Walker*, for the respondent, upon the point " That a corporation, created by statute is a mere creature of law, and can exercise no powers except those which the law confers upon it, or which are incident to its existence." Cited *Perine vs. The Chesapeake & Dela. Canal Co.*, 9 How., 184, and authorities there cited; *Abbott vs. Balts et al.*, 1 Maryland, 542; 6 Gill., 379; 3 Wend., 485; 15 John., 383; 2 Cow., 699. Upon the point that this could not be taken as incidental to the authority to construct the road, and was a means to that end, he cited, 6 Gill., 381; Ang. & Ams. on Corp., § 291; 3 Wend., 485; 7 Wend., 31; 2 Cow., 699; 5 Barb. 649; 19 John., 1; 1

McLean, 41; *Hodges vs. City of Buffalo*, 2 Den., 110; *McCullough vs. Moss*, 5 id., 567, overruling *Moss vs. Rossie Lead Mining Company*, 5 Hill, 137; and *State of Indiana vs. Worman*, 6 id., 33; *Russell vs. Topping*, 5 McLean, 194; *Chatauque County Bank vs. Risley*, 4 Den., 480. Upon the point that the company could not hold lands, he cited, 1 Powell on Mort., 106; 1 Hilliard on Mort. 4; 5 McLean, 194; 4 Den., 480; Cons. Wis., Art. IX., § 3. Upon the point that Walker was bound by the equities between Knowlton and the company, he cited 3 McLean, 103; 12 John. 310. Upon the point that the note and mortgage were void by incapacity to make the agreement, and could not be made the subject of assignment, he cited, *Layton vs. Hughes* 1 M. & S., 593; *United States vs. Owens*, 2 Peters, 527, 540; Nashville Bank *vs. Hays et al.*, 1 Yerg., 243; *Tilford vs. Sumner*, 2 Yerg., 255; 129 R., 310; 3 McLean, 102; 1 Stark. on Ev., 649, 671, 673, 674.

*Hutchinson & Merrill*, on the same side, upon the point that subsequent a purchaser of the railroad mortgage, took the same subject to all the equities existing between the mortgagor and railroad company, at the time he took the same, cited, 2 Paige, 202; 7 id., 316; 2 Coun., 246; *Lamont vs. Stimson*, 5 Wis., 443; *Parker vs. Kane et al.* 4 id., 1, and cases cited; 18 Mon., 421; *Troy & Boston Railroad Co. vs. Tibbits*, 18 Barb., 297; and the forms of the papers put in evidence, to show their want of [negotiability, and also the charter itself; and insisted that the company had not the power to make the contract upon which they were given.

*By the Court*, DIXON, C. J.    The decision of this court, recently announced in the case of *Clark vs. Farrington*, must be considered as decisive of the power of a railroad company, authorized by its charter to receive subscriptions to its capital stock in the manner in which such corporations usually are, to dispose of its stock to a subscriber upon credit, and as a security for the payment therefor, at a future day, to receive from the subscriber his note and mortgage. That case arose under the charter of the La Crosse & Milwaukee Railroad Company. In this, the note and mortgage were given to the

Blunt vs. Walker, et al.

Milwaukee and Mississippi. We deem it unnecessary to comment upon the general principles there so fully discussed, and shall confine ourselves as much as possible to inquiring whether, as is claimed, there is, in this respect, any substantial difference in the powers of the two companies.

The general authority of such corporations, unless there be some provision to the contrary, to receive securities for debts created in the usual course of their business, in the same manner as natural persons, is not denied. It is admitted that they have this power as an accident to that of entering into the contracts out of which the indebtedness arose. But it is contended that, in this respect the charter of the Milwaukee and Mississippi Company is peculiar; that by its terms the company is prohibited from taking securities upon real estate. It is also said, that it differs from others as to the mode in which its stock is to be subscribed and paid for; and that this difference is such as forbade its receiving notes or other securities therefor, but required a present payment, and in money only. We will examine these propositions in the order we have stated them.

The efficient words of the charter in relation to the power of the company to contract generally, are precisely the same as those of the charter of the LaCrosse and Milwaukee Company, and authorize the Board of Directors " to make such covenants, contracts, and agreements, with any person, copartnership, or body politic whatsoever, as the execution and management of the works, and convenience and interest of the company may require; and in general to superintend and direct all the operations, receipts, disbursements, and other proceedings of the company." It was held in the case above referred to, that language like this included the power to make a contract like the present, unless it was elsewhere restricted by the charter, and we determined that it was not. The La Crosse Company is declared to " be capable in law of

purchasing, holding, selling, leasing, and conveying estates, either real, personal, or mixed." The Mississppi Company is declared to be capable of doing the same thing, "so far as the same may be necessary for the purposes hereafter mentioned and no further." By a subsequent section it is authorized to enter upon, take possession of, and use lands along the line of its route, not exceeding a certain width, *"Provided,* that the said corporation shall not, in their corporate capacity, *hold, purchase,* OR DEAL IN, any lands within this territory other than the land on which said road shall run, or which may be actually necessary for the construction or maintenance thereof, and of the warehouses, machine shops, and other fixtures connected therewith."

. Herein it is said a distinction is to be made between the powers of the two corporations. It is manifest that it rests upon the language of this proviso, and principally upon the construction to be put upon the words, "hold, purchase, or deal in." It is not to be disputed that as to the *direct* powers of the corporations in this respect, the distinction is broadly and plainly marked; but the question is whether it really exists as to their *incidental* powers in reference to which the language of the legislature is in both cases exactly the same. If the argument be correct it must go to the extent, and be consistent with an intention on the part of the legislature of denying to this company, under all circumstances, those means and facilities for collecting and securing its debts, contracted in the usual course of its corporate business, which are generally, and, we might say, universally accorded to corporations of the same or a kindred character. It must be held to destroy the implication arising from the previously granted powers, by which all other corporations are deemed to be authorized to enter into the same or like contracts, and the question is, did the legislature so intend? It is the sole object of statutory interpretation or con

struction, to discover the intention of the framers; and when that is ascertained, it is to govern. Did the legislature intend to deprive this company of one of the safest and most beneficial methods of securing and enforcing the payment of debts due to it, which is commonly resorted to by other corporations and natural persons, for that purpose, and without which, according to the course of trade and business known to prevail in the country, the successful accomplishment of its enterprise would be seriously checked and embarrassed? Did they mean to say, that in no emergency, can this company secure to itself, by mortgage or lien upon real estate, a precedent debt, contracted in good faith, and in the legitimate transaction of its business as a corporation? Did they intend to declare that no judgment in its favor should be a lien upon the real estate of the debtor; that no execution upon such judgment, should be levied upon such property? Or if it might, that the company could not protect its rights by bidding at the judicial sale? These and various other similar questions must be answered in the affirmative before the construction contended for can be sustained.

Before a court establishes a construction which is to operate thus harshly upon the interests of a great number of persons, who have invested their means upon the faith of the chartered rights of a corporation, it should be clearly satisfied that the legislature so intended; it should learn, if possible, what motive there was for such a peculiar and isolated restriction; what good was to be attained by it. If no sufficient motive can be found, and no good discovered; if on the other hand its tendency is to thwart and partially defeat the object which the legislature had in view by creating the corporation, it should ascertain if the language is not susceptible of an interpretation, not destructive of, but consistent with the end sought, and at the same time creditable to the good sense and sound judgment of the legislature. We can discover

no motive for such a restriction; no good to be accomplished by it. On the contrary, it seems to us to conflict with the general object of the act, and to be purely evil in its consequences. It is difficult to perceive any reasons why this company was to be so singularly and unjustly restrained. We cannot bring our minds to the conclusion that such was the intention of either the legislature or the promoters.

We are of opinion that there is ample room to give full operation and effect to the language in question, without producing the result contended for. We think it was intended to prohibit the corporation from purchasing, holding or dealing in real estate *directly*, and in a manner unconnected with the lawful and proper management and control of its affairs and business; and that it was not the design to prevent its acquiring an interest therein incidentally, whenever, in the proper exercise of its powers, it became necessary for it to do so, in order to protect its legal rights.

Such, to us, is the obvious spirit and reason of the prohibitory clause. The legislature meant only to confine the company to the true objects of its charter, and to forbid its diverting its capital and investing it in real property, and engaging in land speculations. Nor will the language used, when interpreted according to the well settled and most authentic rule of giving to each word its commonly accepted and plain grammatical signification, bear the construction sought to be put upon it. A mortgagee is not, in ordinary conversation, understood to be either the purchaser, holder or dealer in lands, nor is the act of mortgaging, a purchasing, holding or dealing in real estate. It is true, that it may possibly result in the mortgagee becoming a purchaser. He may be obliged to do so, and to hold and sell in order to replace his debt, interest and expenses. But all this is regarded in the law as a mere remedy, a means given to collect the debt. He would not thereby fall within this restraining clause, according to its

Blunt vs. Walker, et al.

true spirit and meaning. By a dealer in real property, we understand a person who buys and sells for the purpose of gain and profit. By it, no one would understand to be meant a person whose business it is to loan money upon notes or bonds, and mortgages of real estate. In such transactions, the debt is considered the principal thing, the mortgage the incident. It is the money due, to which the mortgagee has the right, and not the land; and unless the mortgagor, by his failure to pay, renders a compulsory proceeding necessary in order to obtain satisfaction, he never acquires an absolute or controlling interest. A mortgage differs widely from an absolute conveyance of land. For all the purposes of negotiation and trade, it is regarded as mere personalty. It attaches itself to the debt and follows its destinies and ownership. It is beneficially assigned, transferred, released, surrendered, reissued and revived with the instrument evidencing the debt, and with no other forms or ceremonies than are requisite to do so with the latter.

It is urged, because the charter in question contains prohibitory words, that the case stands on different grounds than it would if it were merely silent. We do not so regard it. By all the rules of construing such instruments, mere silence as to a given subject, unless it be necessary to the exercise of some authority conferred, is as absolute a negative of power in relation to it as positive words of restriction. Such words can only be regarded as expressive of a desire on the part of the legislature to remove any doubts which otherwise might possibly arise. The case stands, then, as if the charter was silent upon the subject, and falls within those numerous authorities which hold that corporations, which are not directly empowered to hold or deal in real estate, may nevertheless acquire and transmit the title to it, as an incident to their powers to make general contracts touching a particular branch of business. And as this company is authorized to

receive and hold it for some purpose, its unauthorized acqui-
sitions would seem to come within the doctrine of this court
in the cases of *Burns vs. Dodge* , 9 Wis., 458 ; and *Sherwood
vs. the Rock River Bank,* 10 ; id., 230

The question of the power of this company to issue its
stock, taking therefor the note and mortgage, or other security
of the subscriber, payable at a future day, must be regarded
as substantially settled by the case of *Clark vs. Farrington,*
above referred to. The charters of the two companies in this
respect differ very slightly, By that of the La Crosse the
managing officers are empowered "to decide upon the amount
to be paid on such subscription," and " the time and manner
and proportions in which the stockholders shall pay subse-
quent instalments on their respective shares." In this, the
board of directors are declared to " have full power to decide
the time and manner and proportion in which the said stock-
holders shall pay *the money due,* on their respective shares."
It is insisted that the words " money due," obviously distin-
guish this case from the former, that they confine this com-
pany to receiving money only for its stock. If this be ad-
mitted, we do not see how it follows as a conclusion, that a
note and mortgage may not be received.

It is well established, both upon natural reason and legal
authority, that a stock subscription is a contract between the
corporation on one side and the subscriber on the other; and
that as such, courts of justice will enforce it for or against
either. It is a contract which this company was fully author-
ized to enter into. Whatever diversity of opinion may have
formerly been entertained upon the subject, it is well settled
by modern decisions, and the rational and sound rule, no
doubt is, that whenever a corporation has the power to make
a contract and is not restricted in the manner of so doing, as
to such contract, it stands on the same footing as a natural
person ; and that in relation thereto it may adopt any of the

Blunt vs. Walker, et al.

modes immediately calculated to accomplish it which the individual could.

In this case, therefore, in the absence of the special words granting to the directors a discretion, the company would have had the power to give to the subscriber a credit. Not departing from the object in view, the terms of the agreement might be varied and modified to suit the taste, convenience and necessities of the respective parties. But in this case the discretionary power conferred upon the directors to decide the time, manner and proportions in which the stockholders shall pay for their respective shares, puts the matter beyond any reasonable doubt. There seems to be no room for argument upon the question. The counsel seems to understand the word " due " to mean *owing presently*. We cannot do so. Its obvious sense to us is " payable " not presently but generally; that a party is bound by his contract at some time to pay. To hold it, to signify " owing presently," is repugnant to the manifest meaning of the entire sentence, and destructive of the discretion expressly granted. The taking of the note was a mere regulation of the payment. It is one of the most frequent methods of arranging the time, manner and proportions of payments in pecuniary transactions known to the law and to the entire business world. It is a mistaken idea of counsel that the giving of a promissory note by the debtor operates as an absolute payment or extinguishment of the original debt, or changes its nature. This is not so. Unless the note be expressly given and accepted in satisfaction and discharge of the debt, it only suspends the remedy upon it during its currency, and upon its dishonor or non-payment if in the hands of the payee, it may be disregarded, and suit brought for the original indebtedness. Chitty on Contracts, p. 660.

In this case, the mortgagor at the time of the giving of the note and mortgage, subscribed the stock book of the company,

Blunt vs. Walker, et al.

and it is not perceived why the rule applicable to the giving and receiving of notes generally, might not operate here also. Unless we are to give to the language here used some construction different from that which it would receive in ordinary transactions among men, we cannot perceive the smallest room for doubt or hesitation. Suppose an agent or factor, having in his possession the goods of his principal, should be instructed by him to sell them for money only, and should furthermore be told that he had full power to decide the time, manner and proportion in which the purchasers should pay the money due, would any one doubt that, acting in good faith, he could give such a period of credit as in his opinion the interests of his employer required? And in so doing could he not receive from the vendee his note or other written instrument payable in money? If he should take a note payable in specific articles, it might be beyond his authority, but a cash note certainly would not. Suppose, in addition to this, he should take the precaution to secure the payment of the note by the mortgage of the purchaser, would any court be seriously invited to hold him personally responsible to his principal for a violation of his instructions or duty? We cannot say what might be done, but until we have witnessed it, we must be permitted to entertain doubts upon the subject.

The view we have taken of this case renders the principles laid down in *Russell vs. Topping*, 5 McLean, 194, inapplicable to it. That case only goes so far as to hold that a corporation, not expressly authorized, cannot, in a transaction independent of and wholly unconnected with the exercise of its legitimate powers, become the purchaser of real estate, and of course falls far short of the question here presented. It is not only consistent with, but recognizes the correctness of the views we have taken. The case of *Root vs. Goddard*, 3 McLean, 102, seems equally foreign. The

distinction between the giving of a note by a corporation which is forbidden to do so, and the receiving of one from a natural person, by a corporation empowered to do so for some purposes, cannot fail of observation. In the one case, there is an absolute want of power, and the instrument never in fact has an existence. But in the other, it is not so. The individual has the power to make the note and the corporation to receive it under certain circumstances, and unless it be declared void by statute, if received for an unauthorized purpose, it will be good in the hands of an innocent holder.

This is an action for foreclosure and sale commenced by the plaintiff as the holder of a second mortgage upon the lands mortgaged to the railroad company, against the defendants, Knowlton and wife, as mortgagors, the company as the holder of the prior mortgage, and Hurd as a subsequent incumbrancer. The complaint charged that the mortgage given to the company was illegal and void, asked that it might be so declared and set aside, and that the lien of the plaintiff might be adjudged to be prior thereto. In all other respects it is in the ordinary form. Hurd made no answer. The company disclaimed, and the defendant, Walker, as the holder of the note and mortgage given to it, asked leave to come in and defend, which was granted. The complaint was accordingly amended, and he answered insisting on the validity of his security. He alleged that no part of his principal or interest had been paid, and prayed judgment of foreclosure and sale against his co-defendants, Knowlton and wife, in the usual form, and that out of the proceeds of sale his mortgage might be first paid and satisfied. The defendant Knowlton answered, denying the legality of the note and mortgage, and asking that the defendant, Walker, might be decreed to cancel and surrender them to him. He also alleged that they were obtained from him by fraud; but, although he himself was examined as a witness, no proof tending to establish it was offered.

The plaintiff and the defendant Knowlton prevailed in the court below. Its judgment, therefore, must be reversed and the cause remanded with directions, that judgment be entered in accordance with the prayer of the answer of the defendant Walker.