ZEBINA EASTMAN *et al.*

*v.*

THE CITY OF CHICAGO.

DEALERS IN SECOND-HAND GOODS—*booksellers buying and selling second-hand books.*   An ordinance of a city which required dealers in second-hand goods to procure a license, declared that, "any person who keeps a store, office, or place of business, for the purchase or sale of second-hand clothing, or garments of any kind, or second-hand goods, wares or merchandise, is hereby declared to be a dealer in second-hand goods." *Held,* that booksellers, dealing in such stock as is usually kept in a retail book store, who buy and sell, in connection with their other business, and as incidental thereto, second-hand books, are not "dealers in second-hand goods," within the meaning of the ordinance.

APPEAL from the Criminal Court of Cook county; the Hon. HENRY BOOTH, Judge, presiding.

Mr. D. W. JACKSON, for the appellants.

Mr. EGBERT JAMIESON, for the appellee.

Mr. CHIEF JUSTICE SCOTT delivered the opinion of the Court:

This prosecution was commenced under the last clause of section 1, chapter 24, of an ordinance of the city of Chicago, that declares "any person who keeps a store, office, or place of business, for the purchase or sale of second-hand clothing, or garments of any kind, or second-hand goods, wares or merchandise, is hereby declared to be a dealer in second-hand goods."

Defendants are booksellers, dealing in such stock as is usually kept in a retail book store, and buy and sell, in connection with their other business, second-hand books. Whether buying and selling of old books comes within the definition given in the ordinance of a "dealer in second-hand goods," is a question that admits some discussion. The context, as well as the clause of the ordinance cited, would seem to indicate the penalties imposed are leveled against "junk dealers," and dealers in cast-off clothing. What is meant by "second-hand goods, wares or merchandise," is not defined, and is by no means clear, as those words are used in the ordinance.

The offense with which defendants are charged, is not expressly defined, and if their trade is rendered unlawful, it is by the use of the comprehensive and rather indefinite terms, "goods, wares or merchandise." But what warrant can there be for designating "old books" as "second-hand goods, wares or merchandise?" Like old paintings, they may have a peculiar value, for the reason they are old. Certainly they can not, with any degree of accuracy, be classed with old metals, rags, cast-off clothing, and other refuse matter.

But be this as it may, there is one view that is conclusive of the present case. It appears, by stipulation, defendants are not

only booksellers, but dealers in all that class of goods usually kept in a retail book store, such as maps, legal blanks, stereoscopes and stereoscopic views, engravings and paintings, children's toys and games, and new as well as old books. Their annual purchases are from $15,000 to $18,000. Three-fourths of the old books by them purchased are imported directly from England, and these purchases of that class of books over the counter do not exceed $100 each year. Old books, including those imported as well as those bought over the counter, constitute but small part of the stock carried by defendants. Their trade consists chiefly in what are strictly new goods. Obviously, the trade in second-hand books is a mere incident to their business. Exchanges of new books for old editions of the same work, or perhaps for old books, are constantly being made, and, in turn, they are sold as customers may be found, but that, we suppose, is done by most booksellers everywhere, to a greater or less extent. It would be plainly unjust to characterize defendants as "dealers in second-hand goods." Trading in old or second-hand books is not their principal business, except so far as they import old and rare works. Surely it was not intended the provisions of the ordinance should be applied to importers of old and rare books. It is not so declared in the ordinance, and we are not willing to extend its provisions so as to include that trade by judicial construction.

The local trade of defendants in second-hand books is insignificant, and is at most only incidentally connected with their main business, and does not, in our opinion, render them liable to the penalties denounced against dealers in "second-hand goods," without having first obtained a license so to do.

The conviction of defendants is plainly against the law and the evidence, and the judgment will be reversed and the cause remanded.

*Judgment reversed.*