## JAMES E. JOHNSON, APPELLANT, VS. ARMOUR & CO., APPELLEES.

1. The provision of Section 9 of the general revenue act of June 10th, 1891 (Chapter 4010), that all dealers in dressed meats doing a business of twenty-five thousand dollars or more per annum shall pay a license of five hundred dollars, means that such dealers whose annual gross sales amount to the sum stated or more, shall pay an occupational tax of the amount stated.

2. The occupational tax imposed by Section 9 of the general revenue law of June 10th, 1891, on dealers in dressed meats, is not payable in advance, or as a condition precedent to beginning the business; nor is any license required for doing such business.

3. The occupational tax imposed by the 9th section of the general revenue law of June 10th, 1891, on dealers in dressed meats, can not be collected by a levy by a tax collector under the provisions of the 10th section of the act. If not voluntarily paid, its payment must be enforced by an ordinary civil action.

4. The fact that dressed meat sold here is from animals which the vendors raised, or buy, or own and kill in another state and ship hither, does not of itself prevent such vendors from being dealers in dressed meats here; nor does it constitute them butchers or manufacturers here.

Appeal from the Circuit Court for Duval county.

STATEMENT.

In December, 1891, the appellees filed a petition in the office of the Clerk of the Circuit Court of the Fourth Circuit, in and for Duval county, and addressed to the judge of that court, sitting in and for that county, in which they represent:

1. Philip D. Armour and three other persons who are named are citizens and residents of the city of Chicago, in the State of Illinois, and are co-partners doing business under the firm name of Armour & Co., and that they "conduct a branch business in selling dressed meats and provisions in Jacksonville, Fla., at" a designated place therein, "and have duly procured a State and county license therefore, which license, the petition states, is filed as a part of the petition. The exhibit answering this averment in the petition is as follows:

No. 213.   State and County License.

STATE OF FLORIDA, ⎱
DUVAL COUNTY.   ⎰

Received from Armour & Co., the sum of fifteen dollars, for State license, and the sum of seven 50-100 dollars for county license, merchandise $5,000, for the period beginning on the first day of October, 1891, and ending on the first day of October, 1892, as shown by the coupons hereto attached.

                    J. E. JOHNSON, Tax Collector.

In consideration of the above amounts paid to the tax collector, and the judge's fee of twenty-five cents, Armour & Co. are hereby licensed to engage in or manage the business, profession or occupation mentioned in the foregoing receipt, and for the period therein named, in the county of Duval.

Issued October 15th, 1891.

J. E. JOHNSON, Tax Collector.

W. B. OWEN, Judge.

This license is furnished in pursuance of Section 11, Chapter 3681, Laws of Florida.

W. D. BLOXHAM.

There is a note on the exhibit to the effect that there are attached to the above license twelve coupons for each month respectively, from October 1891, to October 1892. It is to be observed that this license does not inform us what business it was issued for, nor does the record do so.

2. That they are not dealers in dressed meats; on the contrary thereof, they kill in the said city of Chicago their own animals and cattle, the meat whereof is dressed by them in said city, and, as so dressed, is shipped thence by the car-load in the original packages in which such dressed meats are put up in Chicago, to the city of Jacksonville, and the same is sold in Jacksonville in such original packages through and by their said branch office there.

3. That said Johnson has levied upon and seized into his possession, and has now in his possession, the merchandize of your orators, and their teams and

wagons, to the extent and amount of sixteen hundred dollars' worth, and threatens to sell and will sell the same under the pretext that, as tax collector of Duval county, he has assessed your orators as dealers in dressed meats in the sum of $500 for purposes of State revenue, and $250 for county revenue of said county, under Section 9 of Chapter 4010 of the Laws of Florida, and under the pretext that as such tax collector he is enforcing the alleged assessment.

4. That the alleged assessment is illegal and void.

The prayer is, that the assessment be declared illegal.

To this petition Johnson filed an answer as follows: 1st. That he is and was tax collector. 2d. That Armour & Co. on the day and date, and before the seizure was made, were a dealer in dressed meats in Duval county, Florida, doing a business of $25,000 per annum, and were then and there liable as such to pay a license to the State of Florida of $500, and $250 for Duval county; and that they carried on and conducted and did a business of $25,000 per annum without first obtaining from the proper authorities a State license to do such business, and that they did not obtain, as alleged, a State and county license to sell dressed meats as a dealer in dressed meats. 3d. The answer denies that the dressed meats, which the petitioners allege are dressed and shipped in the original packages by the car-load to Jacksonville, are sold in Jacksonville by their branch office in the original packages as received by their agents in the last named city.

4th. The answer states that the valuation of the amount of said business as dealers in dressed meats has been duly ascertained by the tax collector according to law. 5th. That defendant, as such tax collector, reported the delinquent firm of Armour & Co. to the State Attorney, who advised the seizure and sale of property of said Armour & Co., and certain personal property was seized, and is now advertised for sale by defendant, tax collector, according to the statute in such cases provided.

The petitioner filed exceptions in writing to the answer, the grounds of which are, that the answer is insufficient, in that it does not show that the seizure was authorized by law; or that the alleged license tax was authorized by law; and does not deny the several material averments of the petition; and it shows upon its face that it is insufficient.

The matter was heard upon the exceptions, and the Circuit Judge made an order declaring the assessment illegal, and directing the property levied on to be returned to the petitioners; and thereupon the tax collector appealed.

The other facts in the case are stated in the opinion of the court.

*The Attorney-General* for Appellant.

27

*A. W. Cockrell & Son* for Appellees.

RANEY, C. J. :

A motion to advance this cause for decision was made on the 27th day of the present month by the Attorney-General, and was granted.

The ninth section of the general revenue law, approved June 10th, 1891, Chapter 4010, enacts that no person shall engage in or manage the business, profession or occupation mentioned therein unless a State license shall have been procured from the tax collector, which license shall be issued to each person on receipt of the amount thereinafter provided, and the fee of the county judge for the license ; and directs how the license shall be signed and sealed, and authorizes incorporated cities and towns to impose further taxes of the same kind, not exceeding fifty per cent. of the State license tax. Among the occupations mentioned is that of a dealer in dressed meats, the 17th paragraph of the section being as follows : All dealers in dressed meats doing a business of twenty-five thousand dollars or more per annum shall pay a license of five hundred dollars. The provisions of the tenth section of the act are to the effect : 1st, that any person or persons, firm or association that shall carry on or conduct any business or profession for which a license is required, without first obtaining such license, shall, except in such cases as are otherwise provided for in the act, be guilty of a misdemeanor, and upon conviction shall be punished by a

fine of not more than double the amount required for such license ; and, 2d, that the payment of all license taxes may be enforced by the seizure and sale of property by the collector ; and, 3d, that tax collectors and county judges shall report to the Comptroller and State Attorney all violations of the "section." The forty-fifth section regulates the sale of personal property for taxes. The exceptions indicated by the words, " except in such cases as are otherwise provided for in this act," of the tenth section refer to the penalties specially provided in connection with certain occupations.

It is apparent that the purpose of the petitioners, as it is disclosed by their petition, was to contest the payment of the particular tax under consideration, on the ground that they were not dealers in meats; but the decision of the Circuit Judge is not based on this ground; on the contrary, it holds the tax imposed on the business in question to be illegal for the reason that the act gives no opportunity to a dealer for a hearing as to the value of his business, and that hence there is a violation of the fundamental principle that no one shall be deprived of his property without due process of law. The brief of appellees' counsel presents also the point that they are not dealers in dressed meats; still we care to devote no more attention to this point than to say that the following authorities may be of service in establishing who are, or are not, dealers, as that word is used in the seventeenth paragraph

of Section nine : Overall vs. Bezeau, 37 Mich., 506 ; Goodwyn vs. Clark, 65 Maine, 280 ; State vs. Do.w, 21 Vt., 484 ; Johnson vs. Hudson, 11 East, 180; King vs. Commissioners of Excise, 2 Term, 381 ; Carter vs. State, 44 Ala., 29 ; Bates & Hines vs. Bank, 2 Ala., 451; Eastman vs. Chicago, 79 Ill,, 178 ; Blunt vs. Walker, 11 Wis., 334 ; and further, that the fact that the meat sold here by the appellees is from animals which they own and kill in Chicago and ship here, does not of itself, prevent appellees from being dealers here, nor bring them within the cases of State vs. Chadbourn, 80 N. C., 479; State vs. Yearby, 82 N. C., 561 ; the business here, as it appears upon the papers before us, not being that of manufacturers or butchers. Whether petitioners raise the animals out of the State on their own stock farm, or buy them out of the State, does not prevent their being dealers in dressed meats here. If, moreover, the purpose of the answer was to allege that the meats were sold otherwise than in the original packages, it may be remarked that no further progress was made towards it than to merely deny that the meats are sold in the original packages. Still there is no necessity in this case for discussing constitutional questions.

From these general observations we turn to a consideration of the nature of the tax provided for by the seventeenth paragraph of the ninth section. It is an occupational tax upon dealers in dressed meats, but it is the clear purpose of the Legislature that it shall be

payable only by those who do a business of twenty-five thousand dollars or more annually. If the business of any dealer in dressed meats does not amount to twenty-five thousand dollars per annum, he does not belong to the taxable class, and the law does not contemplate that he shall be taxed or take out a license. Moreover, if such a dealer does a business of twenty-five thousand dollars during one year, and less than that sum the succeeding year, he is taxable for the former year, but not for the latter. The meaning of the terms "doing a business of twenty-five thousand dollars, or more, per annum," is, that the gross sales for any given year shall amount to at least twenty-five thousand dollars in value. In the same section it is enacted that merchants, storekeepers and druggists, "with a capital of less than five hundred dollars," shall pay in each county, for each place of business, a tax of three dollars, and those having a capital of more than five thousand dollars, a tax of fifteen dollars, while those of intermediate classes are to pay taxes of different amounts. Again, in another paragraph, it is provided that all banks or bankers, banking firms or brokers having a capital stock of one hundred thousand dollars or more, shall pay a license tax of one hundred dollars, while those having a capital stock of less than twenty-five thousand dollars are to pay a tax of twenty dollars, and others of intervening classes are to pay designated amounts. In our judgment, and as is implied by our expressed under-

standing of the words, " doing a business of twenty-five thousand dollars or more, per annum," it can not be said that these words are the mere equivalent of the word "capital," in the case of merchants, storekeepers and druggists, or of " capital stock" in the other class of cases just mentioned. A dealer in dressed meats may have a capital of twenty-five thousand dollars, or, if a stock company, its capital stock may be but the same, and yet the annual sales, or in other words, the business done during the year may amount to very much more than twenty-five thousand dollars, the sum stated. The difference of language shows a distinct difference of intent upon the part of the lawmakers, as to the principle of taxation. The principle of taxation in the case of the dealers in dressed meats being the gross amount of sales per annum, the fact which naturally and obviously presents itself is, that there can be no determination as to the liability of any dealer to pay the stated tax until the year for which such tax may be claimed to be due by him has passed, or at least until his sales have in the course of the year amounted to twenty-five thousand dollars in value. Certainly no dealer of dressed meats can become subject to the provision in question until he has sold twenty-five thousand dollars' worth of such meat. In answer to this proposition it may be urged that it is contrary to the general prohibitory clause of Sections nine and ten given above, which show a positive intent that no business shall be engaged in or entered

upon without first paying the tax and obtaining a license. It is true that this general intent is shown, still there are features of the former section that clearly indicate a special intent that the taxes imposed by it in some cases should not be paid in advance of entering upon the business to which they apply. In the case of insurance companies, each company is to pay the State Treasurer two hundred dollars annually before it shall transact any business here, and in addition thereto to pay to the same officer on the first day of January, after the passage of the act, and of each succeeding January thereafter, one per cent. upon the gross amount of receipts of premiums from policy holders in the State, after deducting therefrom the amount of losses actually paid to policy holders during the preceding year. Auctioneers pay a license tax of ten dollars, and in addition thereto a tax of one-half of one per cent. upon the gross amount of sales made by them, and of five per cent. of the sales of personal property of a traveling dealer, trader, merchant or salesman. They are required to render to the tax collector of the county, on the first Monday in each month, a sworn report of all sales made by them, and at the same time pay over to him the amount due thereon. It is evident that the one per cent. tax payable by insurance companies on the first day of January is payable on the business of the preceding year, and that the percentage payable by auctioneers is on past business. In these two cases there is both a spe-

cific license tax payable in advance, and a percentage payable after the income has been received or the sales made. The auctioneer, no less than the insurance company, is liable for the percentage. One tax is independent of the quantity of business, the other dependent upon it, and a license being required to issue in connection with the payment of the former, but not as to the latter. In the case at bar a previous license can not, in the nature of things, be required, and there is no tax independent of business, but the sole tax is dependent upon the amount of business; and as in the former case the taxes which are dependent upon business are not payable until after the business has been done, or, in other words, their payment is not a condition precedent to engaging in the occupation of an insurance company or auctioneer, so in the case of dealers in dressed meats whose business amounts to twenty-five thousand dollars per annum, their tax of five hundred dollars is not payable until the business has been done, and, like the percentages mentioned, is not within the clauses of the statute which provide for its payment before the business can be engaged in.

Unlike the cases of insurance companies and auctioneers, there is no specific time prescribed for the payment of the tax by dealers in dressed meats ; this, however, has no material weight against our conclusions. The statute went into operation on the fourth day of August, 1891, the Legislature having adjourned on the fifth day of the preceding June. If the petitioners were engaged in the business when the act be-

·came operative, a year began then for which it was liable for the tax, if at the end thereof its business had amounted to as much as twenty-five thousand ·dollars in value.   If, however, petitioners did not begin business till after the act went into operation, then ·a year began upon their going into business.   It is ·contemplated that payment shall be made immediately ·after the expiration of any year during which the business has amounted to the value which the statute has made the test of liability.

No tax was imposed by the preceding revenue act on dealers of this character.   This being so, and the present act having taken effect on the fourth day of August, 1891, only about three months had elapsed when the seizure of the petitioner's property was made.   If we should assume that the tax might become due before the end of the business year by the fact of sales to the amount of twenty-five thousand dollars having been made before its expiration, the record before us does not show that such was the case, and in the absence of such showing the action of the tax collector must be regarded as premature.   This is not the purpose or effect of the second and fourth statements of the answer, which are: 2d. That Armour & ·Co. on the day and date, and before the seizure was made, were dealers in dressed meats in Duval county ·doing a business of twenty-five thousand dollars per annum, and were then and there liable as such to pay a license to the State of Florida of five hundred dollars,  and of two hundred and fifty dollars for the

county of Duval, and that they carried on and conducted and did business of twenty-five thousand dollars, without first obtaining from the proper authorities a State license to do such business. and that they did not obtain a State and county license to sell dressed meats as a dealer in such meats; and, 4th, that the valuation of the amount of said business as dealers in dressed meats has been duly ascertained by the tax collector according to law. The theory of these statements is that the tax is a license tax, the payment of which as well as the obtaining of a license, is a condition precedent to commencing business ; and the only reasonable inference, supported by the pleadings, is that the value of the business has been founded on an estimate of what the business may amount to, made for the purpose of deciding whether or not the firm was liable to pay a tax and take out a license as a permit to do business for the current year, and that it is not a finding of the amount of sales actually made as a complete year for which the tax was due as contemplated by the statute. The fourth paragraph, set out above, does not specify the manner in which the alleged ascertainment of the amount of the business has been made, nor are we aware of any special mode of doing it that has been prescribed by law, and to which the pleader may have had reference ; it is a mere conclusion of law.

As indicated above, the tax is not a license tax within that meaning of the statute which requires the

payment of the tax and the issuing of a license before business can be engaged in⸴ In coming to this n-conclusion we are not unmindful of the fact that the word "license" is used in the clause under consideration, nor that the word "tax" may reasonably be supplied as having•been intended to follow it; but even reading "license" as "license tax," our judgment, in view of what has been said above, is that it necessarily means no more than occupational tax. We moreover do not think that the provision of the tenth section, that payment of all "license taxes" may be enforced by the seizure and sale of property by the tax collector, is applicable to this tax. It is clear that the first provision of that section, *supra*, relates solely to those occupations or kinds of business for which a license must be obtained before they can be engaged in ; or in other words, those for which a license must be obtained by the payment of the tax and license fee ; and the "license taxes" meant in the second provision are those taxes in connection with whose payment a license is to issue, and no others. The third provision also strengthens this view, and for the reason that the purpose of the report to the State Attorney is a criminal prosecution for having engaged in business without first obtaining a license. Of the different kinds or classes of taxes prescribed by the ninth section, the tenth section applies only to the one class indicated. The statute prescribes no remedy for the collection of the tax on dealers in dressed meats, and this being the case, its payment is to be enforced by an ordinary civil action. Cooley on Taxation, 15-19,

435 ; Dollar Savings Bank vs. United States, 19 Wall.,
227 ; Baltimore, etc. vs. Howard, 6 Harris & J., 383;
Mayor vs. McKee, 2 Yerg., 167 ; State vs. Severance,
55 Mo., 379 ; Carondelet vs. Picot, 38 Mo., 125 ; John-
son vs. Louisville, 11 Bush., 527.

The proceeding in this case was instituted under the
fourth section of the act of January 4th, 1848, Section
1542, Revised Statutes, and both parties have tacitly
assented to the use of the remedy for the purposes of
this case; still we feel that it is proper to say that
there is doubt that occupational and license taxes are
"assessments" within its meaning and scope, and it
will not be understood that we are concluded on this
point by this cause. Carr vs. Thomas, 18 Fla., 736,
743.

The judgment should be affirmed for the reasons
given above. It will be so ordered.