IRA K. FARRINGTON, and others, In Equity,

*vs.*

WILLIAM L. PUTNAM and another, Executors, and others.

Cumberland.     Opinion June 4, 1897.

*Will. Devise. Charitable Association. Limitation. Governmental and Judicial*
*Questions. Maine Eye and Ear Infirmary. R. S., c. 55,*
*§§ 1, 4, 10; c. 66, § 2.*

The Maine Eye and Ear Infirmary is a charitable association organized under a
general statute which allows it to take and hold by purchase, gift, devise or
bequest, personal or real estate, in all not exceeding one hundred thousand
dollars in value owned at any one time. The institution already has that full
amount of property as capital, and, if it receives the personal and real estate
bequeathed and devised to it in trust for charitable purposes by the late Ira
P. Farrington, it will then possess the property so bequeathed and devised
in excess of the amount authorized by its act of organization. The next of
kin of the testator, by a bill in equity instituted after the probate of the will,
against the corporation and the executors, seek for this cause to have such
provisions of the will declared to be inoperative and void.

*Held;* that the will is valid on its face, there being no statute in this state
limiting the testamentary capacity of the testator; that the limitation, in the
charter of the corporation, of the amount of property it may hold, was
mainly intended as a regulative and directory provision, and is only impliedly
and not expressly prohibitory, no penalties being attached thereto; that the
charter is a contract or compact between the corporation and the state, the
limitation being for the benefit of the general public represented by the state,
and not for the heirs of the testator or any particular persons; that any
transgression of the compact by the corporation in accepting excessive
devises or bequests is an offense only against the state, and in no sense an
offense against the heirs of the testator or his next of kin; that the contested
devises and bequests are voidable only and not void, and must be treated as
valid until declared void; that whether they shall be declared void or be per-
mitted to remain as valid is a question of policy or expediency which the
state must determine for itself, a governmental and not a judicial question;
that such question can only be determined in a direct proceeding originated
by the state through its representative officers, and not by any collateral
proceeding brought by or for the benefit of any individuals to set such pro-
visions aside; and, finally, that the state has not hitherto, in the present
condition of its charitable institutions, felt any motive to enforce strict

exactions upon them, nor has the legislature yet seen cause for placing restraint upon the power of testators to bequeath property to such institutions, a step easily taken when deemed necessary or wise to do so.

IN EQUITY. ON EXCEPTIONS AND APPEAL.

This was a bill in equity, brought by and in behalf of the several heirs at law of Ira P. Farrington, late of Portland, deceased, against the executors of said Farrington's estate and the Maine Eye and Ear Infirmary, of said Portland, such of said heirs at law as were not made plaintiffs in the bill being joined as defendants therein. Demurrers were filed by the executors and by the Maine Eye and Ear Infirmary, and the cause came on to be heard in the court below, where the demurrers were sustained and the plaintiffs filed exceptions. The presiding justice made a decree dismissing the plaintiffs' bill and from this decree an appeal was taken to this court.

The bill in equity with its exhibits, the demurrers both of the executors, and of the Maine Eye and Ear Infirmary, and the opinion and rulings of the presiding justice, and the decree by said justice were all made a part of the bill of exceptions.

The case is stated in the opinion.

*Orville D. Baker* and *Clarence Hale*, for plaintiffs.

Direct gifts to a corporation, not in form of a trust, turn primarily on the construction of the particular statute, and that construction must be governed: first, by the language; second, by the purposes of the statute, and cannot be controlled or aided by the construction put by other courts upon other statutes wholly different in language or in purpose.

The Maine Eye and Ear Infirmary is strictly limited by our statute in its original capacity to $100,000 ; the corporation has no acquiring capacity beyond that amount; and, therefore, a bequest to it in excess of that sum is absolutely void, and no title to such property can reach or vest in the corporation, even if the conveyance were by deed.

If the statute would not prevent title from vesting under an executed deed, it contains a clear, implied prohibition against the acquisition of such property, and such implied prohibition is as

strong as an express prohibition, the same as an implied contract, once established, is as binding as an express contract. Hence, no executory conveyance or trust in defiance of the statute can be carried out by the courts.

The statute is to be enforced by direct application of the heirs, the only parties interested in the property, sparing the corporation any forfeiture of its charter or confiscation of its general property which is rightfully held. Such a remedy aims directly at the prohibited property and nothing more; and is the only remedy by which the purposes of the statute can be accomplished.

Even in the case of deeds, so long as anything remains to be done by act of law, or by assistance of the court, to perfect even the mere possession in the grantee, it is more than doubtful whether the court ever lends that necessary aid to accomplish the violation of the statute; and no well considered case will be found, or has been cited, where the court has sustained an action on such a deed, unless the grantee has already obtained actual possession as well as title.

As to the cases cited by the defendants, it is to be noted: first, that the tribunals themselves are of little authority; second, that the distinction between title and possession was not brought to the court's attention, nor in any way passed upon as a part of their decisions.

In the case of wills, as under the statutes of Maine, affirmative acts and decrees of the court are necessary to perfect and consummate the title, first, by approval of the will; second, by decree of distribution and, third, by sustaining the direct suit, if the executor declines to pay. There is no possible ground, either in law or equity, on which the court will lend the aid of its decrees to perfect an incomplete violation of the statute and of the policy of the law, and thus make itself particeps criminis in the illegal acts.

In cases of charitable trusts, such as this is conceded to be, the court will distinguish between the trustee and the beneficiary; between the mere conduit of title and the beneficial object of the trust. The trustee may be incapable, and yet the beneficial objects

of the trust may be valid; or the trustee may be capable, and the beneficiary incapable,—the objects of the trust be illegal and void.

Where the trustee alone is incapable, but the objects are valid, the law regards the valid nature of the trust rather than the illegal conduit, and will execute the trust, when necessary, by appointing a new trustee. In such case, the trust itself being valid, the heirs can have no possible interest in the bequest, and, therefore, the government alone can raise the question of the trustee's incapability.

But where the beneficial object of the trust is itself illegal, or where the beneficiary himself is incapable, the trust is illegal through and through; such trusts are against the conscience of the court, and equity will not execute them, but they are wholly void; even though the legal title may have actually vested in a capable or incapable trustee, equity obliges him to hold that title as a resulting trust for the heirs, and the heirs have full power to contest this question directly, and without waiting for the state. And the court will not, for these reasons, appoint a new trustee; nor, for the same reasons, does the doctrine of cy pres apply.

*J. W. Symonds, D. W. Snow and C. S. Cook; C. L. Hutchinson; C. F. Libby, F. W. Robinson and Levi Turner; and Edward Woodman,* for defendants.

SITTING: PETERS, C. J., WALTON, EMERY, FOSTER, WHITEHOUSE, WISWELL, JJ.

PETERS, C. J. Ira P. Farrington, the testator, whose will is called in question by this bill in equity, died at his home in Portland, December 17, 1894, leaving a will dated July 9, 1891, and a codicil dated January 4, 1893. The will was probated in January, 1895, in the probate court below and approved by this court in the next April afterwards. The will, after a most generous provision for his widow, and numerous bequests to his relatives, besides several large bequests to certain local charities other than those to be herein named, contains the following residuary clause:—"Fifth. All the rest and residue of Estate, Real and Personal or Mixed,

wherever situate, which I may own at my decease, or which I may then have the right to dispose by Will, including all and any of the foregoing legacies, devises and other provisions which may in whole or in part lapse or for any reason fail, I give the Maine Eye and Ear Infirmary in the city of Portland, incorporated according to the Statutes of Maine, the Maine General Hospital and the Portland Public Library, share and share alike, upon trusts nevertheless, as follows:

" The one-third given said Eye and Ear Infirmary shall be maintained as a separate fund, designated as ' The Farrington Fund,' held, invested and re-invested, and the net income thereof applied forever annually, or oftener, to the Charitable purposes of the Corporation.

" Likewise the one-third given the Maine General Hospital shall be in the same manner maintained as a separate fund, designated as ' The Farrington Fund,' held, invested and re-invested, and the net income thereof applied forever annually, or oftener, one-half for the support of free beds, in its hospital, to be known as ' the Farrington Free Beds,' and the other half to the general Charitable purposes and the maintenance of the Corporation.

" And likewise the one-third given the Portland Public Library shall be in the same manner maintained forever as a separate fund, designated as ' The Farrington Fund,' held, invested and re-invested, and the net income thereof applied forever annually, or oftener, to the support of the Library of said Corporation.

" Provided, nevertheless, that whatever principal sum or sums may come hereunder to the Portland Public Library shall be paid to the city of Portland on the following trusts, namely,—

" To pay thereon perpetually interest semi-annually at the rate of four (4) per cent per annum, to the Portland Public Library, said interest to be applied as aforesaid by said Portland Public Library to the support of its Library.

" Said fund shall be entered on the books of the city as ' The Farrington Fund for the benefit of the Portland Public Library,' and the interest so paid by the city shall be entered on the books of the Portland Public Library as interest from such ' Farrington Fund.'

"If the city shall decline to accept the same on the trust aforesaid, or if for two years after request in writing by my executors to accept the same as aforesaid, the city shall neglect so to accept, I direct that said principal sum or sums be paid to said Portland Public Library to be held, invested and re-invested and the net income thereof applied as hereinbefore set out."

The testator names Hon. William L. Putnam and Hon. Thomas H. Haskell as executors, and confers certain authority over his estate on them as such executors as follows: "I give the executors full possession, management and control of all my real estate wherever situate, subject to the devise of my beloved wife; and I authorize them from time to time to lease, sell or exchange the same, or any part thereof, and to receive the proceeds of such leases and sales and all other incomes or other proceeds thereof, for the purpose of fully executing this will, reminding them, however, that their authority over my estate whether real or personal is given solely for the purpose of closing and distributing the same as heretofore mentioned directed, with a prudent regard for obtaining fair prices within a reasonable time to be taken therefor."

The codicil is as follows:

"I hereby re-publish and re-affirm said will except as herein modified.

"The gift of the one-third part of the rest and residue of my estate to the Maine General Hospital by the fifth clause of said will and all gifts and devises in any part of said will to said Maine General Hospital, I hereby revoke; and I hereby give, devise and bequeath all the same one-third and all other said gifts and devises, to the Maine Eye and Ear Infirmary, to hold to the use of it and its successors and assigns forever; the same to be in addition to, and not to affect or change, the gifts and devises to said Maine Eye and Ear Infirmary in said will contained. I double the gift of $20,000, to the Home for Aged Men of Portland."

The Eye and Ear Infirmary is a charitable association organized under the general statute which authorizes the formation of such corporations. R. S., Ch. 55, § 1. Numerous kinds and classes of persons and associations are permitted by this section to be organ-

ized into corporations, including all social, military, literary, scientific, temperance, moral, musical, agricultural, and many other societies and organizations. Section four of the chapter prescribes as follows: "Such corporations may take and hold by purchase, gift, devise or bequest, personal or real estate, in all not exceeding one hundred thousand dollars in value, owned at any one time, and may use and dispose thereof only for the purposes for which the corporation was organized." The constitution of the Infirmary, a public record, declares the purpose of the institution as follows: "The object of the corporation shall be the establishment and maintenance of an infirmary in Portland, Maine, where a daily clinic may be held for the treatment, free of charge, of poor persons throughout the state, suffering from diseases of the eye and ear."

The bill alleges that the Infirmary had at the death of the testator property to the full amount of one hundred thousand dollars in value, and that any additional amounts to be received through this will would be in excess of the limit allowed by its charter and in disregard of the statutes of the state; and so it further alleges "that the said Maine Eye and Ear Infirmary is incompetent to receive and incapable of holding any property beyond the amount which it now possesses, and that the bequests and devises made to it under Item 5th of the said will and under the codicil to said will of said Ira P. Farrington are invalid and void, and revert to the heirs of Ira P. Farrington." The bill includes the Infirmary and the executors as respondents, the prayer of the same being that the parties be enjoined, the one against paying over, and the other against receiving the devises and bequests in execution of the intention of the testator.

Both of these respondents, the executors and the corporation, filed general demurrers to the bill, which were sustained by the justice before whom the case was heard below, and the case comes to us on exceptions and a final decree in favor of the respondents. Mr. Justice STROUT of this court, by whom the issues were decided, filed a written judgment in the case from which we reproduce that portion of the same which bears upon the questions we propose now to discuss, reading as follows: "This is a bill in equity, and

comes before the court on demurrers. The will of Ira P. Farrington contains a bequest to the Maine Eye and Ear Infirmary. The complainants allege that that corporation is authorized to hold property to the amount of $100,000, and no more; and that it now holds property to that amount, and therefore cannot take the legacy given to it by the will. As the demurrer admits the facts, it must be assumed that the legatee now holds the full amount of property which it is entitled to hold. It is admitted to be a public charitable institution. Can it take the legacy, or devise? The gift is from the residue of the estate, after payment of legacies, and may include both real and personal property.

"At common law, corporations were entitled to take and hold real or personal property to any amount, if it was reasonably useful and convenient in attaining its legitimate ends. In England, so large an amount had been acquired and held by its corporations, particularly the ecclesiastical, that as a measure of purely public policy the statute of mortmain was enacted to prevent the accumulation of real estate in ecclesiastical corporations. That statute has not been generally adopted in this country; but it has been deemed wise in many instances to limit in the charter, or by general law, the amount of property to be held by corporations. In this state, by statute, corporations are entitled to hold and convey lands and other property. R. S., c. 66, § 2. This authority is unlimited, unless the charter, or general law under which the corporation is created, or some statute, imposes a limit. A limit of $100,000 is imposed by the statute under which this corporation was created. Taken in connection with the common law, and the general statute upon the subject, it is apparent that the limitation upon this class of corporations, not applicable to many others, was a matter of public policy. As such, it is for the state alone to take advantage of its breach, if it chooses, or it may waive it; and consequently private parties cannot be permitted to assert against the corporation a violation of the limitation. The decided weight of authority is to this effect, and the principle is deemed sound.

"A devise of lands operates a conveyance upon probate of the will. The devisee takes by purchase. The title may be defeated,

if the subject of the devise is required for the payment of debts. A bequest of personalty also is perfected in the legatee, at the date of the probate of the will, subject to the same contingency, although the time of payment may be deferred by the provisions of the will or the contingencies of administration.

"The will, in this case, gave to the Infirmary one-third of the residue of the estate, after payment of legacies, in trust, to be invested and kept invested, the income only to be applied to the charitable purposes for which the institution was organized. The codicil added another third of the residue to the gift, but said nothing about trust; but the fair construction of the codicil, taken in connection with the trust created by the will, is that the trust attaches to the entire two-thirds. The effect of the codicil was to increase the one-third in the original will to two-thirds. No other change was intended by the testator. The whole scheme in his mind was charity. The gift was to a public charity, administered by the corporation created for that purpose.

"The Infirmary can take the gift, upon the trusts specified, and hold it against all, except the state, although the amount is in excess of the limitation in the statute.

"If, however, the Infirmary should be regarded as incompetent to take the property in trust, it being devoted by the testator to a public charitable use, the court would appoint a trustee to carry into effect the testator's bounty. A public charity, definite in its objects as this is, is never allowed to fail for want of a trustee, and if the trustee originally appointed is incapable, from any cause, to take the property and execute the trust, a competent trustee will be appointed."

The question on the first branch of the case, therefore, is whether these devises and bequests are absolutely void as the complainants contend, or whether they are merely voidable according to the view of the question taken by the respondents. After very much examination of the authorities pro and con, and careful consideration of the principles which affect the respective positions of the parties, we feel forced to the conclusion that the position advocated by the complainants ought not to be sustained. We feel

very much impressed with the theory, stated in many of the cases, that a charter is a contract between the state and the corporation; and that for any misuse or abuse of its privileges or powers the corporation is amenable to the state only, no individual having anything to do with the question. As applicable to the present case, the principle is that, if the infirmary, by accepting these bequests and devises, increases its property ever so much in excess of the amount in value which the statute allows it to possess, it would be a transgression of the law which the state can prosecute or not as it pleases, and the heirs of the testator have no interest therein. As long as the state does not interfere for the violation, it waives it and permits the infirmary to retain the property.

The general statute under which this infirmary was organized is not expressly prohibitory, but rather regulative and directory. No penalties are attached and none intended more than a possible forfeiture of the excessive property received, or of the charter, or of one or both. This interpretation of the statute cannot by any possibility be harmful to the community, as the state can make it as stringent as it pleases at any time. But thus far the state has had no motive either to amend the statute or to enforce forfeitures for violation of its provisions. And in one section of the chapter relating to general organizations the legislature allows devises, bequests and gifts to towns for the establishment, or increase of public libraries, without imposing any limitation whatever. R. S., Ch. 55, § 10. There cannot be an objection that such absorption of property excludes capital from taxation, because that is a matter wholly within the control of the legislature.

An over-strict construction of the law and of the rights of parties under the law in the case before us is neither expedient nor reasonable. Here is an institution, and the only one of the kind in the state, and virtually a state charitable institution of the most beneficent and humane kind, seeking money for supporting its very life and existence, and to enable it to render assistance free of charge to the poor of the state suffering from diseases of the eye and ear. This testator, who had been always a director in the institution and finally its president, knowing and fully appreciating

its condition and necessities, after making provisions for other local charities, and giving to his next of kin preferred bequests according to his own judgment as to what they should have out of his estate, made, not while in the extremities of sickness, but nearly five years before his death, these legacies and devises for the use of the infirmary. Presumably he and those whose assistance he obtained to aid him in executing his purposes never dreamed that there was any obstacle in the way of his giving or the infirmary receiving the bounties which he so strongly desired to be charitably expended. And now what a spectacle is presented if equity be successfully invoked to take advantage of this accident or mistake; equity, whose boasted vocation is to relieve against accident and mistake, in order to wrest from this institution these donations for the benefit of distant relatives and heirs! What a public misfortune it would have been, if on account of the limited amount of capital it is by its charter privileged to hold, it had turned out that our oldest college in this state was prevented from receiving the munificent bequests lately tendered to it by deceased citizens of the states of California and New York, such donations not having as yet been actually received, and the state itself powerless to allow the college to take the gifts merely on account of such limitation!

It will be noticed that most of the authorities, on which the complainants rely, concede that the rule which we would apply to devises is at all events applicable to gifts by deed, the argument being that in such a case as this a deed would be valid and a devise void. It seems inconsistent that such potential consequences should attach to the mere form of transmitting the property. We do not appreciate the justice of saying that a deed of property delivered by a donor on the day of his death to a corporation would be good, and a devise of the same property made on the same day would be bad. But the argument by the complainants is that, in the one case, the transaction is executed and, in the other case, that it cannot be considered as executed without a resort to the forms and assistance of the courts. We think the whole thing involves a distinction without a difference, a formal but not substantial distinction. Each mode of transfer needs the protection and aid

of the law to render it operative. In the first place, the will must be probated, it is said. But on that question no inquiry can be instituted to see if there be any impropriety in any particular devise or bequest. The residuary bequest in this will is fair and proper on its face, and that is all that is required. The act of probating the will is the probating of all its parts. A devise of real estate vests such estate at once in the devisee, the title of such devisee being liable to be defeated if the estate be necessary for the payment of debts or the expenses of administration. Section 15, Ch. 74, R. S., reads as follows: "No will is effectual to pass real or personal estate unless proved and allowed in the probate court." This will has been approved by the probate courts below and above with no questions or exceptions thereto pending. But it is said the bequest of the personal estate cannot be carried into effect until a distribution has been ordered and the executors' accounts have been approved. We think that even this fine technicality may be avoided by the executors, if need be. They would be justified in paying all the property left in their hands as residuary estate without any order therefor, should the devisees be willing to accept it and discharge the executors from their responsibilities. A good many estates are settled by the parties interested without any aid or order from the probate court.

The foregoing reasoning only serves to illustrate the unsubstantial foundation upon which it is endeavored to raise a technical excuse for pronouncing a deed voidable and a devise absolutely void. The true and conclusive answer, however, to this indefensible position of the complainants is that it is utter assumption on their part in declaring a devise like this to be void, when it is voidable merely, and can be rendered void in no way other than by the act of the government itself. No wrongful act by a corporation renders its charter void or creates any forfeiture without proceeding by which such forfeiture shall be established. A cause for forfeiture is not itself forfeiture. The same section which prescribes the amount of property which this corporation may hold, also declares that it may use and dispose of the same for the purposes for which it was organized. Suppose the corporation wrong-

fully uses or disposes of its property, could any party but the state intervene to punish the corporation for such transgression?

Now what is there illegal, let us ask, in this court or in the probate court below acting in the furtherance of bequests that are simply voidable and consequently valid until they have been declared to be otherwise upon the intervention of the state? If the state has the exclusive privilege, as it has, of rendering the voidable bequest void, what is there wrongful in our regarding it as sound and sufficient while the question of its validity is not acted upon by the state, or the error is waived or permitted by the state? What right has the judicial branch of the government to dictate what the state should do against its will or its policy, and decide a question for the state which the state can better decide for itself? What right has the court to deprive the state of all opportunity to determine whether it will thus severely punish this corporation for the mistake of the testator or will waive or overlook it? Certainly the state should not be prevented from making such election. If courts at the instigation of heirs can refuse to act upon voidable bequests as valid until avoided by the state, then, as a matter of course, the state can practically never have any opportunity to exercise its discretion in such a case any more than as if such right never existed, and the court would be assuming the prerogative of really acting in opposition to the state. The court could not exercise any broad discretion in the solution of the question, while the state could. It certainly is an excellent policy to refer such questions to the discretionary power of the state, which can determine them, according to the circumstances, upon the great principles of justice and generosity, and in conformity with the wishes and welfare of the whole community. Among so many societies and associations as are organized under the general statute there will always be exceptional cases where, from their amount of business or other causes they have come to exceed the limitation of capital allowed them, and it is reasonable that the state should have the privilege, if it pleases, of relaxing the statutory restraints in such exceptional cases. And the circumstances of the present case make the strongest appeal for the protection of this devisee

against the loss of the generous gifts to it from one who loved the institution as he would have loved his child, and who devoted to its interests his time and services, and, as he supposed, a goodly share of his estate which had been earned by his industry and economy for a long lifetime. And it may not be amiss to state the fact that the legislature has lately increased the limitation of capital which the infirmary may hold from one hundred thousand to one million of dollars.

There is but little authority, either English or American, favoring the conclusion that bequests or devises not strictly authorized by law are to be considered void instead of voidable. This will be seen in the examination of cases in this country to be made in the progress of this discussion. But it may also be worth the while to notice what application has been made of the principle by the English courts in view of the statutes of mortmain as existing in that country. In Grant on Corporations, a reputable English work on the subject, at page *101, the author states the doctrine as follows: "The meaning of the term unlicensed corporation is this. As was observed above, the conveyance of lands to a corporation was not made void to all intents and purposes by the statutes of mortmain, but only voidable at the option of the lords and the crown; consequently if the mesne lords and the crown all consented to waive the escheat, each in their respective rights, the corporation to whom the land was granted enjoyed the property unmolested. In process of time the rights of the lords becoming difficult to trace, a license from the crown was generally considered sufficient to ascertain the right of property to the corporation; and this license it became usual for corporations to obtain from the crown, enabling them to take lands to such a value, notwithstanding the statutes of mortmain. In strictness, however, the license to hold in mortmain was only a waiver of the right of the crown to enter on the lands alienated; for as no royal charter can per se take away the property, or prejudice the interest of the subject, such license did not abrogate the right of the mesne lords to enter, and therefore, with respect to them, the corporation was not secure until the lapse of the periods respectively limited for the assertion

of their rights. In fact the king's license had only the effect of waiving the crown's right to the escheat, etc., etc." The author further says: "The question is of the more importance, as there is no doubt that many corporations have greatly exceeded the limits of their license, and hold such surplus lands without any right derived from it for their doing so. It is clear, however, that if a corporation have exhausted their license to hold in mortmain, the fact does not make a devise or conveyance to them void. The only result is, that they may take, though, unless they can obtain an extension by the crown of their license, they cannot hold the lands, unless the mesne lords and the crown choose to sleep upon their respective titles."

The cases in this country, most of them which favor the principle that an estate in the condition this is goes to the heirs of a testator rather than to the devisee, seem to inculcate the idea that the heirs may waive their right so as to allow the estate to pass to the devisee. And we have not the slightest doubt that, but for the interference of the heirs in the present case by this bill in equity, no obstacle would have stood in the way of a complete administration of the testator's estate according to his clearly expressed intention. No court would have had the least hesitation in following the ordinary course of procedure, or would have entertained the thought, suo moto, of instituting inquiry to see whether the bequests in question were valid or not. But why should a bequest, invalid when not consented to by the heirs, become unobjectionable when such consent is obtained? If illegal as coming from the testator, why not just as illegal when coming from the testator and his heirs? Such considerations as these go to show how illogical and untenable a position it is to denominate the devises and bequests in the present will absolutely void.

Each side relies on certain authorities in defense of its position, and between the two sides many have been referred to. The first one relied on by the complainants, and probably one of the earliest decisions on the question in this country, is *Trustees of Davidson College* v. *Chamber's Executors*, reported, in 1857, in 3 Jones, N. C. Eq. 251. The same question arose there that exists here, and

the case was decided according to the contention of the complainants in this case. It went on the theory that, as the college was seeking to obtain an illegal bequest, the law could not assist it to do so, and that the bequest was absolutely void. It was a severe and technical decision, reasoned out without the aid of authorities, as few in this country existed to throw light on the subject at that time. But the opinion admits that its severe doctrine did not apply to real estate and only to personal property. Should that be the law in this state, and we do not see why not if the law of that case is to prevail here, it may turn out that the residuary clause here is valid as operative only on real estate. But in our judgment the dissenting opinion in that case by Nash, C. J., is more satisfactory than the prevailing opinions delivered by the two associate justices. The argument of the chief justice is more in consonance with the doctrine which has grown up since that day. The chief justice, after declaring that the restriction as to amount of corporate property is merely directory, and that the bequest was not void but at the most voidable, goes on to say: " If the restriction is a condition, it is a condition subsequent, for a breach of which no action can be taken against a corporation but by the sovereign ; and with the latter and its officials it is a matter of discretion whether a forfeiture will be enforced or not. To work a forfeiture of chartered privileges there must be something more than accidental negligence, excess of power, or mistake; there must be something wrong arising from willful abuse or neglect. There is here no judicial forfeiture for none has been judicially pronounced. Granting that, by taking the whole of the property devised, the total amount would exceed in value what the corporation was entitled to possess, and thereby its charter might be forfeited, can the defendants (executors) or next of kin take advantage of the condition in these proceedings? A charter is a contract between the corporation and the sovereign. It is well settled that none but the parties and their privies can take advantage of a breach of a condition. Now neither Mr. Chambers (donor) nor his executors, nor his next of kin are any parties or privies to this contract. Upon what principle then is it that the executor can refuse his

assent to this legacy to the college, or upon what principle can the next of kin claim it or any portion of it?" And the chief justice considers many English cases in support of his plain propositions, and we are only prevented from quoting more at length from his opinion by the want of space.

The next case cited by the complainants is that of *Cromie's Heirs* v. *Louisville Orphans' Home Soc.* 3 Bush, (Ky.) 365, decided in 1867. And this case we consider more favorable to the party against whom it is cited than to the party citing it. It appears that a citizen of Kentucky made different bequests in his will and among them one to an incorporated society in the State of New York, which already possessed all the property that the laws of New York allowed it to have for its capital. The testator's heirs contested the validity of the bequest on that account. The opinion of the court is peculiar and savors a little of judicial sectionalism. While it was admitted that the remedy for taking an excess of capital would be in a forfeiture of some kind, and that the forfeiture would belong to the State of New York, still it was thought inexpedient to send it there because that state might apply the proceeds of any forfeiture for purposes different from the objects to which the same would be applied in Kentucky; and so it was held that, as Kentucky could not avail itself of any forfeiture for the fault of a foreign corporation, and as New York should not have it under the circumstances, the heirs of the testator living in Kentucky better have the benefit of the same. But the court speaks significantly on the legal question as follows: "The question of title is between the corporation and the owner of the forfeited right." . . . . "The limitation in this case is a mere matter of state policy, and the state of New York can alone take advantage of its violation." And then the court goes on to justify its withholding from New York what it admits belongs to that state, and its giving the same to the heirs, in the manner following: "But notwithstanding this legal conclusion, should a court of equity enforce the devise against the heirs when, if the limitation has been transcended, the state of New York may take from the devisee the excess over the maximum of the prescribed value,

and their court might thus give it, whatever it may be, to an object never contemplated by the testator and to which he never would have devised it? The answer is, clearly not." The opinion concedes the point precisely as the defense in the present case claims it to be, but avoids its enforcement on account of the peculiar situation of the parties to be affected by the result.

The case of *Chamberlain* v. *Chamberlain*, 43 N. Y. 424, is cited by the complainants as an authority favoring the position espoused by them. The opinion on this point is not fortified by any authorities, is quite brief as far as relates to the present question, and gives as a reason for its conclusion that "unlimited trusts of this character might become an unmitigated evil." But, let us ask, is that a question for the courts to determine or is it for the state, a judicial, or is it a governmental power or policy! Cannot the state by its representative officers regulate the tendency of the so-called evil with their power of instituting proceedings for forfeitures and escheats, or cannot the state by its legislative power entirely prevent it by penalties or provisions to that end whenever it sees fit to do so?

But the opinion in the case cited admits as much when it goes on to say: "Doubtless the restriction on corporations is a governmental regulation and one of policy to be enforced by the government." That is precisely what the respondents are contending for. Then the opinion adds: "But an individual whose interests are affected may also insist on the legislation as a restriction." There is precisely the difference between that case and this. The effect of the reasoning in that case is that such an excessive bequest is voidable only and not void, but that it may be avoided by the government or by the heirs of the testator. On the other hand the present respondents admit that such a bequest is voidable, and contend that it can be avoided only by the state—that the bequest is not of itself a forfeiture, but at most a cause for forfeiture. It seems to us inconsistent to declare that the heir has the same right as the state, for in such case, as we have said before, the heir would practically have the exclusive right of repudiation and the state have none. Should not the state control its own policy and

action on the question ?   Nor do we see how the apprehended evil of trusts is going to be prevented by regarding deeds of trust voidable and devises void.

The complainants also rely very much on the Cornell University case, reported in 1888, under the title of *Matter of McGraw*, 111 N. Y. 66, a strongly stated case and in point here, excepting as the New York policy differs from the policy maintained elsewhere, and as the municipal law there differs from the statutes of other states and especially from the statutory system of our own state.   It is there held that such devises and bequests as these are absolutely and irrevocably void, and in this respect the case is not wholly consistent with the views expressed by the same court in the Chamberlain case already commented on, and is in great advance of any doctrine expressed in any previous case in that state.   The result is reached by an interpretation " of the general statutes of the state relating to the organization and holding of property by corporations of the class of Cornell University as the same have been affected by the terms of the special charter granted to it."   While in our own state we have no statute affecting the question outside of the terms of the corporate charter itself, or of the general law authorizing the charter, the New York code contains clauses touching the ability of corporations to acquire property which her court construes to be expressly and utterly prohibitory.   The provisions are of themselves severe and they are also strictly and severely construed by the New York Court.   This same case came before the Supreme Court of the United States afterwards, and that court declined to review the decision of the New York Court of Appeals upon the ground that no federal question was presented, inasmuch as the decision sought to be reviewed was based upon the charter of the University and the municipal law of the state of New York.   *Cornell University*, 136 U. S. 152.   The statute of wills in New York is disabling and restraining in its character and prohibits a devise to a corporation unless specially permitted by its charter or by some statute to take property by devise.   Her statutes on analogous subjects have been restrictive and her decisions have been accordingly.   Its code

forbade a charitable trust to be created upon real estate. Its decisions decline to uphold a trust when a trust exists without a trustee, differing therein from the decisions of other states. Mr. Schouler (Schoul. Wills, § 26, note) says: "Under the policy of the New York code an unincorporated association appears to be treated with little favor as the beneficiary of a devise." The same restrictive policy led its highest court to hold that a mortgage to a National Bank to secure future advances as well as past indebtedness was void (*Crocker* v. *Whitney*, 71 N. Y. 161) and this doctrine was overruled by the more liberal policy of the United States Supreme Court in *National Bank* v. *Whitney*, 103 U. S. 99.. In *Rainey* v. *Laing*, 58 Barb. 189, the Supreme Court of New York in a carefully argued and considered case precisely like the present decided that the devise was valid as against all parties but the state, and the difference between that opinion and the one rendered by the Court of Appeals is that the one proceeds upon the liberal policy more generally entertained by courts and the other was governed by the more restricted and peculiar policy of the code and courts of New York. The case of *Wood* v. *Hammond*, 16 R. I. 98, is also relied on by the complainants as an authority of importance in their favor, a case which follows the opinion of the New York court in the McGraw case, and in point corroborates that opinion. See also *Cogyershall* v. *Home for Children*, 18 R. I. 696. The only other case cited on this branch of the case in behalf of the complainants is *De Camp* v. *Dobbins*, 31 N. J. Eq. 671, and as the defense also relies on the same case reported in an earlier volume, we will defer commenting on that authority until we make a cursory review of some of the adjudged cases cited on the other side of the question.

In opposition to the doctrine attempted to be maintained by the complainants, the respondents have cited quite an array of cases, both of a direct and indirect bearing on the question, some of which will receive our examination.

The first on the list is *Jones* v. *Habersham*, 107 U. S. 174, a case of devise precisely in point, where Gray, J., delivering the opinion of the court, said: "But there are two conclusive answers

to this argument.   First, restrictions imposed by the charter of the corporation upon the amount of property it may hold cannot be taken advantage of collaterally by private persons, but only by the state which created it."   This case is assailed in the argument of counsel in several ways, and, we think, without actual effect.   It is said that it is brief, but its brevity indicates the assurance which the learned justice felt that his proposition was correct.   It is also objected to the force of the opinion that two grounds are given for the result to stand upon.   But the ground invoked by the respondents is first given as of first importance, and this as well as the other ground is declared to be conclusive.   It is further objected that the cases cited in support of the proposition of the opinion are not pertinent to the issue.   The opinion does not discuss the very fine distinction, which the complainants contend for, between a gift by devise and a gift by deed, for the reason undoubtedly that the court entertained the belief that there is no real difference between the two, and that either is voidable only and not void.   And so the cases in support of the opinion are cited from both classes of the authorities.   One voidable mode of gift cannot differ from any other voidable mode in its consequences and effect.   And if it be admitted that a devise of the kind in question is only voidable, all that the complainants are contending for falls to the ground.   The learned counsel for the complainants does not notice the fact that the same case came to the supreme court by appeal from the circuit court below, where it was elaborately discussed by counsel and court, on this and other points, Mr. Justice Bradley of the supreme court sitting in the capacity of a circuit judge, and delivering the opinion of that court, reported in 3 Woods, 443, in which opinion the learned justice, among other things, remarks as follows : " It seems to us that the gift to the Georgia Historical Society is not void.   This, if the society accepted the trust, may have been cause of forfeiting its charter, but the gift would be none the less vested in it.   To hold otherwise would be to render the society exempt from any inquiry on the subject at the suit of the state." . . . .   " Certain things there are ultra vires of a corporation, but when it has the power to hold property, and is forbidden to hold

beyond a certain amount, the matter being one of degree merely, or of more and less, this is not a question of ultra vires but of a violation of its charter. A contrary rule would involve many absurdities, [the court here stating some of them.] The corporation may be amenable to the penalty of violating its charter, but individuals cannot call it in question. Its tenants must continue to pay its rent, and its debtors their debts; the state alone has the right to proceed against it. The state may see fit or may not see fit to do so. It would depend on the circumstances of the case, the greatness of the excess, the causes which led to it, etc. The state may condone the offense, and the legistature may relieve by enlarging its powers." The late Justice Bradley was far-famed as an original thinker, and his idea that if the contrary rule prevailed a corporation could never be punished for accepting a bequest which gave it property of value above the limit allowable, because it could defend upon the ground that the bequest was completely void, is certainly original and forcible.

A similar if not the same question arose in *National Bank* v. *Whitney*, 103 U. S. 99, affecting the present case in several respects. The case was first decided by the New York court of Appeals and its decision reversed by the Supreme Court of the United States. The National banking act allowed banks instituted by its authority to take mortgages on real estate for certain specified purposes "and no other." This bank took a mortgage on real estate to secure past indebtedness and also for such future advances as the bank might furnish the mortgager. The latter branch of the transaction was directly forbidden by the banking act, the security not being for one of the purposes permitting it to be taken, and was declared by the New York court to be utterly void, but by the supreme court to be voidable only until rendered void by some action on the part of the federal government. In the appellate court Field, J., in the opinion says: "Disregard for the prohibition only laid the association open to punishment by the government. The impending danger of a judgment for ouster and dissolution was, we think, the check and no other contemplated by Congress. The consequence insisted upon did not follow. The

statute did not declare such security void, but was silent on the subject. And had Congress so intended, it could easily have said so." All of this reasoning is as fitting in the present case as in that. There is nothing in the statute or charter of the Infirmary stating that either deed or devise to it bestowing more property upon it than one hundred thousand dollars shall be void. We have already sufficiently discussed the position that the law commits no wrong to actively participate in the execution of merely voidable bequests, for the reason that such bequests are to be considered valid by the courts until vacated or avoided by the state through its representative officers. But that fallacious position of the complainants, as we think it is, was involved in the case cited. The bank was the plaintiff, asking for the aid of the law, not for defending a possession but for obtaining possession. It never had any actual possession of the land or its proceeds. Subsequent mortgagees of the same property had the possession first of the land and then of its proceeds. The bank was not sent out of court as a party unworthy on that account the protection of the court. Feeling the force with which this case presses against their position the complainants contend that there is a substantial difference between that case and this. We think, however, that the principle supporting both cases is essentially the same, and must seem to be so to the mind of an impartial investigator. The legal authors so estimate it, as will be seen hereafter. .

*Vidal* v. *Girard's Executors*, 2 How. 127, may also well be regarded as a significant authority on the question, where Story, J., says: "If the trusts were in themselves valid in point of law, it is plain that neither the heirs of the testator, nor any other private persons, could have any right to inquire into or contest the right of the corporation to take the property, or to execute the trusts; but this right would exclusively belong to the state in its sovereign capacity, and in its sole discretion, to inquire into and contest the same by a quo warranto, or other proper judicial proceeding."

In harmony with these federal cases is the very recent decision of the same question by the Maryland Court of Appeals in the case of *Hanson* v. *Little Sisters of the Poor in Baltimore*, 79 Md.

434, (affirmed January, 1897, in *Congregational Church B'ld'g Soc.* v. *Everett*, Maryland Appeals, 36 Atl. Rep. 654,) in which the court gives its reasons for preferring the adoption of the doctrine of the federal courts rather than that promulgated in the Cornell University case by the court in New York. In that case the proceeding was, as it is here, by a bill in equity brought by the heirs to have the devise declared void. The court .in its opinion states the question and its decision of it clearly where it says: "It cannot be doubted that this corporation had power to take and hold any estate or property not exceeding the charter limits, and the devise, therefore, was not void on its face, and must be held valid as to all the world until. it has been determined, at the instance of the state, that the charter has been violated. If they have violated the law of their being they have committed a wrong, not against any particular individual, but against the state, and this wrong can only be inquired into at the instance of the state. In other words, the corporation can take property to any amount, but can hold it, as against the state, only to the amount provided by its charter." How does the active participation of a court, in promoting the administration of such a devise, become wrongful, as the complainants contend, so long as the wrong on the part of the corporation is not inquired into by the state, and the state, instead of urging objection, by its legislature consents thereto? Of course, in no sense can the state be considered as any party to the present proceedings. The meaning of the argument of the court in the case cited is that, while it is the law that a charitable corporation shall hold only the amount of capital prescribed by its charter, it is also the law that no one besides the state can, in any suit or proceeding, properly take notice of such transgression by the corporation.

In the case cited the court also says: "The contrary doctrine would make it very hazardous to take title from a corporation with such a limitation on its charter, and, if the objection could be made by any one, title to property once held by such corporations would cease to be marketable, litigation would be promoted, and courts would be constantly called on to decide the very difficult

question of fact as to whether the property of a corporation does or does not exceed in value the charter limits. In the case now before us, the estimates of the witnesses differ greatly, and a devise or bequest would be held valid or void according to the estimate adopted by the court. We think this is one of the cases which may be put in the class with those referred to by the late Justice Miller in his dissenting opinion in *Fritts* v. *Palmer*, 132 U. S. 293, where he says: "I can conceive of cases where corporations have been authorized to acquire a limited amount of real estate, such as the legislature may conceive to be useful and necessary to the purpose for which they are organized, in which the question as to whether they have exceeded that amount may be one for the state alone, and not of any private citizen." The counsel for the present complainants argues that the objection of inconvenience should have but the slightest influence on a question where so much principle is involved. We think, however, that the position of the Maryland court in this respect is not to be underrated. Certainly, titles affected in the way above-named would be much more hazardous if a devise of the kind be declared void instead of voidable, for a devise to all intents and purposes void must remain so through all the mutations of ownership, and the heirs might never be shut out from reclaiming the property thus illegally devised. Many fixed principles of the law have been established on grounds of policy merely, even by the creation of legal fictions if necessary to reach a just result. There are policies within a policy, questions within a question, the smaller controlling the greater question as the rim of a wheel is supported and controlled by its spokes. The difficulty of applying the restrictive rule is a circumstance worth consideration. In one of the New York cases where, under the policy acted on in that state, a part of the bequest only could be received, the decree of the court was that so much of the bequest of money might be taken as would at seven per cent per annum create an annuity of four thousand dollars; and undoubtedly the same fund would produce to-day not more than half as much annuity. Do not such considerations help to induce the belief that the liberal policy advocated by the defense is the better policy?

Another case is cited by the defense over which there is some contention between the parties as to its value as a precedent, the case of *De Camp* v. *Dobbins*, 29 N. J. Eq. 36. The exact question arose there as it exists here, and Chancellor Runyon decided it on the same line on which the question was disposed of in the cases in the federal supreme court, although the Chancellor thought the same result might be reached also upon another ground disclosed by the facts. The case appears again on appeal in 31 N. J. Eq. 689, when the first decree was affirmed, Beasley, C. J., writing an opinion sustaining the decree upon a ground other than that selected by the Chancellor and in opposition to the latter's opinion. The counsel here assumes that the whole court adopted the views of Chief Justice Beasley. The case does not show such a thing. In closing his opinion the Chief Justice says: "I shall vote to affirm the decree below," and thereupon it is stated by the reporter that the decree below was unanimously affirmed. It is not intimated upon what ground the numerous members of that court cast their votes, whether upon the opinion of the Chancellor or that of the Chief Justice, and there was no occasion that it should appear. On the contrary we think we are justified in the inference that the Chancellor was supported by the court excepting the Chief Justice, and we notice that another court has the same supposition. *Wood* v. *Hammond*, 16 R. I. 98, cited supra. The Chancellor stated (29 N. J. E. p. 41) the essential conclusion arrived at in his opinion as follows: "If such limitations did in fact exist, it would not incapacitate the corporation from taking the gift, although its property at the time of receiving the gift was of the full annual value of two thousand dollars. If a corporation takes land by grant or devise in trust or otherwise which by its charter it cannot hold, its title is good as against third persons and strangers; the state alone can interfere." (Perry on Trusts, § 45; *Wade* v. *Am. Col. Society*, 7 S. & M. 633.) And again, if the limitation did in fact exist, the legislature might remove the restriction and permit the corporation to execute the trust or authorize it to receive the gift and administer the trust notwithstanding the limitation. This court will not suffer a trust to fail

for want of a trustee, but will uphold the trust for a reasonable time, when necessary in order to enable the trustee to obtain the requisite authority to take and execute it; cites *Bridges* v. *Pleasants*, 4 Ired Eq. 26, 30 ; *Inglis* v. *Trustees of Sailor's Snug Harbor*, 3 Pet. 99."

In *Hamsher* v. *Hamsher*, 132 Ill. 273, where the validity of a devise was involved, it is said in the head note of the case : " Whether the corporation exceeds its power in receiving land by gift or devise is a question alone for the state." And in the opinion the court says : " If the Young Men's Christian Association of Decatur has exceeded in extent its power of holding real estate, appellant, ( heir ) we concede, cannot take advantage of the fact. ( *Alexander* v. *Tolleston Club*, 110 Ill. 65. ) Where a corporation may for some purposes acquire and hold the title to real estate, it cannot be made a question by any party, except the state, whether the real estate has been acquired for the authorized uses or not. ( *Hayward* v. *Davidson*, 41 Ind. 214. ) There being capacity to purchase or to receive by devise whether the corporation, in so purchasing or receiving, exceeds its power is a question between it and the state and does not concern the appellant."

In a peculiar case of devise in Massachusetts, *Baker* v. *Clarke Institution*, &c., 110 Mass. 88, the court says : " The purposes and objects of the trust are distinctly set forth. If its full execution had been found to be impossible by reason of the continued incapacity of the cestui que trust to take the whole fund, it might have become necessary and proper for the court to declare a resulting trust, as to the excess, in favor of the next of kin, to be applied by law," citing the New York case of *Chamberlain* v. *Chamberlain*, supra, for that proposition. Later in the opinion the court says : " But even if it was intended to evade or disregard the limit of legal capacity, we are not prepared to hold that it would render the bequest invalid, either in whole, or for the excess." And the court further adds : " But we cannot doubt that a removal by the Legislature, of such a restriction upon the capacity of the corporation, before the complete execution of the trust, will enable it to receive the whole fund for its benefit, although for

peculiar reasons not important here, it could not do so at the time the will took effect." Here, certainly, is seen the idea of the court, that the excessive bequest was no more than a voidable act, indirectly said as strongly as if directly expressed. Mr. Schouler in his work on Wills § 24, under the belief that receiving an excessive amount of capital is a voidable act merely, as will be seen by a later reference to his text, says, in a note: "Enabling acts of this character are frequently met in the special legislation of American states at each session, that of Massachusetts for instance."

*Chambers* v. *St. Louis*, 29 Mo. 543, is a case of a devise of property to a municipal corporation for certain purposes, and the question was as to what extent the corporation could take and hold the property. In this case the court, among other things, said: "It is a matter between the state and the city. The law is only directory in relation to corporations taking land. It inflicts no penalty nor does it in terms avoid the conveyance. Nowhere is a corporation in express terms prohibited from taking and holding lands. . . . It is not for the courts in a collateral way to determine the question of misuser by declaring void conveyances made in good faith." The city was authorized to acquire land necessary only for its municipal purposes. The case of *Hayward* v. *Davidson*, 41 Ind. 212, involved a similar question upon a devise to county commissioners for the benefit of a county, and was decided the same way as was the case in Missouri.

We have already referred to the case of *Rainey* v. *Laing*, 58 Barb. 453, as differing entirely from the *McGraw* or *Cornell University* case, for the reason that it was decided on a policy generally prevailing in the American courts rather than on the statute of wills in the state of New York which statute is, as construed by its Court of Appeals, intensely prohibitory in its character. In the case cited (*Rainey* v. *Laing*), the court said: "That the question whether the property with that which the Synod already held would exceed in amount the sum to which its charter restricted it, could not be tried in an action brought by the executors for the construction of the will.

"That the question was not to be determined collaterally but only in a direct proceeding by the state.

"That the condition imposed in the act incapacitating the Synod, being not against its taking but against its taking and holding, the corporation could take, but whether it could hold was another question, not necessary or proper in this collateral way to be considered, a question purely of public policy with which individuals had no concern, but in which the state as the sovereign was alone interested and which it might either raise or waive according to its pleasure."

Another case of devise, relied on by both parties, *Heiskell* v. *Chickasaw Lodge*, a late case reported, in 1889, in 3 Pickle, (Tenn.) 668, 686. The case holds that as to a devise, where the charity is definite, heirs and other devisees cannot question the legal capacity of the trustee to hold and administer the trust, but the state alone can do so. At the time the devise took effect, the corporation held more than the amount prescribed in its charter. The same case also held, in deference to the decision in the Cornell case, that there is a difference whether the funds bequeathed have been actually received or not by the donee, while we do not understand the latter case as admitting that a devise or bequest of the kind would be otherwise than void under any circumstances. But Mr. Pritchard, a Tennessee author, explains, in a note to his work on Wills, published as lately as 1894, that the Tennessee court was misled by not noticing the grounds upon which the Cornell University case was decided by the New York court. And we quote below a portion of this note, numbered 13 to section 153 of the work referred to, as being instructive because of its references to many cases, and nests of cases in books, and particularly because it contains a clear explanation of why and how the New York policy, as illustrated in the Cornell University case, differs from the policy of other states on the same question. The note discusses the English statutes of mortmain, and says that by the English statutes of mortmain, beginning with 9 Henry III, corporations were prohibited from taking or holding lands without the King's license and that they were therefore excepted from the

operation of the statutes of Wills. The note then says that these statutes were never adopted in Tennessee, and then continues: "In Pennsylvania, however, no corporation can take or hold lands unless specially authorized by act of the Legislature. *Goundie* v. *Northampton Water Co.* 7 Pa. St. 233; *Watts App.* 78 Pa. St. 370. The exception contained in the English statute of Wills was incorporated into the New York statute of Wills, and under it, it was held that a devise of land directly to a corporation was void, but that a devise to a natural person in trust for a corporation was good. *McCartee* v. *Orphan Asylum Soc.* 8 Cowen, 437, (18 Am. Dec. 516.) A later statute of that state provides that devises of land may be made to every person capable by law of holding real estate, but no devise to a corporation shall be valid unless such corporation be expressly authorized by its charter or by statute to take by devise. 2 R. S. (N. Y.) 57 §§ 1, 2, 3. This statute renders devises directly or indirectly to a corporation void in the prohibited cases. *Dunning* v. *Marshall*, 23 N. Y. 366; *Bascom* v. *Albertson*, 34 N. Y. 584; *King* v. *Rundle*, 15 Barb. 150; *Matter of McGraw*, 111 N. Y. 66, 84. This statute operates upon the testamentary power. Consequently a devise made in New York to a foreign corporation is void, although the foreign corporation has authority by its charter to receive the devise. *White* v. *Howard*, 46 N. Y. 144, 165; *U. S.* v. *Fox*, 94 U. S. 315; *Boyce* v. *City of St. Louis*, 29 Barb. 650. But a New York corporation can take by devise in Connecticut although the devise would be prohibited if made in New York. The reason is that the corporation carries with it its charter but not the law of devise of New York. *White* v. *Howard*, 38 Conn. 342; *Thompson* v. *Swoope*, 24 Pa. St. 474; *American Bible Society* v. *Marshall*, 15 Ohio St. 537. But see contra, *Starkweather* v. *American Bible Society*, 22 Am. Rep. 133 (72 Ill. 50); *U. S. Trust Co.* v. *Lee*, 24 Am. Rep. 236 (73 Ill. 142). A devise of land in New York to the United States is bad. *Matter of Fox*, 63 Barb. 157 (52 N. Y. 530); *U. S.* v. *Fox*, 94 U. S. 315, but good in Massachusetts where there is no limitation as to devises to corporations. *Dixon* v. *U. S.* 125 Mass. 311. Corporations are usually limited as to the amount or value

of real estate which they may hold, but, even where the corporation is already holding as much land as it is authorized to hold, its right to land devised to it can be questioned by the state only, unless, as in New York, there is some statute declaring the devise itself void. *The Bank* v. *Poitiaux*, 15 Am. Dec. 706 (S. C. 3 Randolph, (Va.) 136); *Mallett* v. *Simpson*, 55 Am. Rep. 594, (94 N. C. 37); *Blount* v. *Walker*, 78 Am. Dec. 709 (11 Wis. 334); *Leazure* v. *Hillegas*, 7 S. & R. (Pa.) 313; *Bayard* v. *Bank of Washington*, 11 Id. 411; *DeCamp* v. *Dobbins*, 29 N. J. Eq. 36; *Hough* v. *Cook Co.* 73 Ill. 23; *Barron* v. *Turnpike*, 9 Hump. 304. In *Heiskell* v. *Chickasaw Lodge*, 3 Pickle, 668, 686, it is stated that there is a distinction between the case where a corporation is actually holding property in excess of the limitation of its charter and the case where a devise is made to it and the property devised has not yet come to its possession, and it is said that in the first case no one but the state can raise the question or enforce the forfeiture ; but in the second case the heirs or residuary legatee may raise the question, because the gift would be void and the property would go the same as if it had not been made. Dickinson, Sp. J. cites *Matter of McGraw*, 111 N. Y. 66, to sustain this distinction. He seems to have overlooked the fact that the statute of Wills in New York expressly declares such devises void. There can be no objection to the heirs making the question where the testamentary power is thus expressly limited by statute. In the absence of such a statute the devise is not void as fully shown by the authority cited above, and the heirs could no more attack it before the corporation went into the possession of a realty devised than afterwards. See extended note to *Page* v. *Heineberg*, (40 Vt. 81) 94 Am. Dec. 378, 381-387; *Barron* v. *Turnpike*, 9 Hump. 304; *Dockery* v. *Miller*, Id. 731; *Fellows* v. *Miner*, 119 Mass. 541; 1 Mor. Corp. 332, 333, 678; *National Bank* v. *Whitney*, 103 U. S. 99; *Runyan* v. *Coster*, 14 Pet. 122."

The foregoing cases, with one exception, are where the question is discussed as to the ability of corporations to acquire by devise or bequest property exceeding the amount which their charters expressly allow them to possess. In addition to those authori-

ties, many others are cited by the counsel for the respondents which affect the question in a less direct but more general way, and are important as containing discussions of the general principle at stake, and as indicating the common judicial sentiment on this and kindred questions; some of them bearing with special force on the question by analogy to it, others being the private opinions to some extent of individual justices perhaps, but all of them combined operating with much force and effect on the particular issue involved.    The same idea pulsates through them all. Some of them are the following:

In *Heard* v. *Talbot*, 7 Gray, 113, in discussing the relations in which a corporation stands towards the state as well as towards individuals interested in the same question, the following remarks made in the opinion of the court appear: "Although the disuse of the canal and its abandonment by the corporation may be a gross disregard of the duty imposed on them by law and an essential violation of the terms and conditions implied from the contract entered into with the government by the acceptance of a charter, and upon due proceedings had may be a sufficient ground upon which to decree a forfeiture of all their corporate rights and privileges, they do not constitute any valid ground upon which the exercise by the corporation of any of the powers conferred by their charter can be defeated or denied by third persons in collateral proceedings.    This results from the very nature of the act of incorporation.    It is not a contract between the corporate body, on the one hand, and individuals whose rights and interests may be affected by the exercise of its powers, on the other.    It is a compact between the corporation and the government from which they derived their powers.    Individuals, therefore, cannot take it upon themselves in the assertion of private rights, to insist upon breaches of the contract by the corporation, as a ground for resisting or denying the exercise of a corporate power.    That can be done only by the government with which the contract was made, and in proceedings only instituted against the corporation. . . . Therefore, it has been often held that a cause of forfeiture, however great, cannot be taken advantage of or enforced against corpora-

tions collaterally or incidentally, or in any other mode than by a direct proceeding for that object in behalf of the government."

In *Davis* v. *Old Col. R. R. Co.* 131 Mass. 258, is a learned discussion by Gray, J., in the course of which he says : " There is a clear distinction between the exercise by a corporation of a power not conferred upon it, varying from the objects of its creation as declared in the law of its organization, and the abuse of a general power, or the failure to comply with prescribed formalities or regulations in a particular instance;" to which proposition many and various cases are cited. In commenting on a former case between the same parties, it is in the opinion said as follows: " The objection that a corporation had no right to trade in gravel or land was raised by the defendant by way of defense to a bill in equity by the corporation for specific performance of his agreement. . . . . . There can be no doubt of the correctness of the decision overruling the objection. The corporation by its purchase had acquired a title to the land, which was good against all the world, except possibly by the commonwealth."

It was upon the distinction above stated that it was held, in *Brunswick Gas Light Co.* v. *United Gas Co.*, 85 Maine, 532, that one gas company could not sell its charter, inclusive of rights obtained through the exercise of the principle of eminent domain, to another gas company without the consent of the legislature. The same distinction is aptly stated, in a *South Dakota mining case*, *Gilbert* v. *Hole*, 49 N. W. Rep. 1, in this way: " There is a difference between exercising power entirely foreign to the nature of a corporation and exercising legitimate powers to an improper extent. In the former case, the acts done might be absolutely void; in the latter, they would only be voidable by a proper proceeding on the part of the state." The general rule illustrated by some of the preceding cases is also well put in case of *Alexander* v. *Tolleston Club*, 110 Ill. 65, where the head note reads thus: " When a corporation, by the law of its creation is authorized in some cases or for some purposes or to a certain extent to take and hold a title to real estate, it cannot be made a question by any party except the state whether its real estate has been secured for

the authorized use or not, or is in excess of the capacity of the corporation to take and hold. The state alone must assert her policy in that regard." In another Illinois case it is said: " A third person cannot in a collateral proceeding question the power of a corporation to hold real estate; only the state can do this, and in a direct proceeding." *Barnes* v. *Suddard*, 117 Ill. 237. ( 13 Am. & Eng. Cor. Cases, 7 ).

But the present suit is not either instituted or controlled by the state. It is a collateral proceeding by private parties. The state is not thereby exercising her policy, and if the suit can be sustained the state will have no opportunity whatever to express by any act its assent or dissent in relation to the conduct of the corporation in accepting the bequests. The state is neither directly or indirectly represented in the litigation. What can be plainer! But the corporation is using the state's machinery for their purposes, it is said. Is not that the business of the state whether such use of her procedure shall be had or not ? Cannot the court wait until the state through her officials comes into court asking for any judicial assistance ?

In *Briggs* v. *Cape Cod Ship Canal*, 137 Mass. 71, the point of many cases is expressed in these words: " The act of incorporation is a contract between the commonwealth and the corporation ; whether the corporation has complied with the conditions is a question of fact to be judicially determined. The commonwealth may waive a strict compliance with the terms of the act, and may elect whether it will insist upon a forfeiture, if there has been a breach of condition." Even the North Carolina court feels some amelioration of its rigid doctrine maintained in *Chambers' Executors* v. *Davidson College*, the first case cited on complainants' brief, when, in *Mallett* v. *Simpson*, 94 N. C. 37, thirty years after its first decision, it says : " Conceding that the railroad company had not purchased the land in question or used it for the purposes contemplated by the charter, the deed to it vested the legal title in it and its right to purchase and hold land could not be collaterally assailed. No one but the state could take advantage of the defect that the purchase was ultra vires."

The case of *Penobscot Boom Corporation* v. *Lamson*, 16 Maine, 224, is the only one looking towards the present question, but it contains a germ of the true principle when it decides that, in an action by a corporation, the defendant cannot take an advantage of any use or abuse of its coporate powers.

The law authors are nearly or quite unanimous in their concurrence on the exact question presented for our determination. In Devlin on Deeds, volume 1, § 120, it is laid down that "if a charter of a corporation forbids it to purchase or take lands, a deed made to it is void." And the author in the next following section (121) ascribes to the state the discretion of applying any remedy, saying that "the general rule is that the state alone can take advantage of the clause of the charter prohibiting a corporation from holding land." In Beach on Private Corporations, § 378, it is said that "no party except the state can object that the corporation is holding real estate in excess of its rights." And it seems to us that it is a consistent deduction from that proposition to say that no party but the state can object to any effort by a corporation to acquire real estate. How can a thing be wrong in the beginning and right in the end? How can it be logically said that a contemplated act is wrong and as soon as consummated is right? It would seem as if the first step towards a wrong act would constitute less offense than the last step would.

Says Mr. Perry, in his reliable work on Trusts, "if a corporation takes land by grant or bequest in trust or otherwise which by its charter it cannot hold, its title is good as against third persons and strangers; the state only can interfere." Perry, Trusts, § 45.

The quotation below from Schouler on Wills (§ 24) directly implies that the bequests he is speaking of are merely voidable, for if void a legislature at its will could not cure the difficulty. The author says: "But limitations and restrictions under the act of incorporation should here be regarded, to the extent, at least, of procuring an enabling act from the legislature to hold the property where the original charter privileges would otherwise be transcended. In Massachusetts and many other states no disability to take by either devise or bequest is imposed by the statute of wills

upon corporations.   But the American rule is not uniform.   Under the New York code, for instance, it is expressly declared that no devise to a corporation shall be valid unless the corporation be expressly authorized by its charter or by statute to take by devise."

The text of the section, in Pritchard on Wills, section 153, an extended note to which we have already incorporated in this opinion, on a review of the authorities, says that when a corporation is already holding as much land as it is authorized to hold, its right to land devised to it can be questioned by the state only unless, as in New York, there is some statute declaring the devise to be void.   It is said in Morawetz on Pri. Cor. § 671, as follows: "The statute of New York prohibiting devises of real estate to corporations, unless expressly authorized by their charters or by statute to take by devise, renders prohibited devises absolutely void; and it has been held that the legislature cannot by subsequent enactment validate a devise which is void under the statute, for this would impair the vested rights of the heir.

"A distinction should be observed between the effect of laws restricting the power of testators to devise their property to corporations, and laws restricting the power of corporations to take property.   Such laws differ both in their application and in their legal effect."   Again the author says in another section (§ 332) as follows:   "A distinction should be observed between those laws whose object it is to regulate corporations in respect of their power of acquiring and holding property, and laws whose object is to restrict the power of testators to dispose of their property.   Laws of the former description are enacted in pursuance of a general policy of preventing corporations from acquiring the ownership of real estate in the absence of express authority from the state.   But laws prohibiting devises to corporations are intended to restrict the testamentary capacity of testators, and their object in many instances is to prevent testators from being driven by the improper use of religious influence to devise their property to religious institutions and thus disinherit their heirs."

Mr. Thompson, the learned and able commentator on Corporations, in his work which is the latest of any in this country on the

subject, considers carefully the precise point in dispute between the present parties; and, in a lengthy section, fairly and fully states the effect of the authorities on both sides, and expresses his own opinion on the point in very positive terms in the manner following: "According to one view, if the amount of land which a corporation may hold is prescribed by its governing statute, and if it has already acquired lands to such an extent that a further devise to it will exceed that limit, then, in so far as the devise is in excess of that limit, it is void and the title vests in the heirs. In such a case, the principle that the state alone can question the right of the corporation to hold the lands, does not in the opinion of some of the courts apply, but the heirs of the testator can raise the question. Nor, in such a case is the construction put upon the language of the statutes of mortmain applicable, making a distinction between the power to take and the power to hold; but such a statute in the absence of some plain expression showing the contrary intent, is construed as prohibiting a taking where the prescribed limit has been reached. But other courts have taken the view that here, as in other cases, the question of the capacity of the corporation to take, is one which can be raised by the state alone, and this is the *only view sustainable* on the analogies of this question. That view is that a *devise* to a corporation, incapable for that or any other reason from taking, is good as against every one save the state; just as is a deed to a corporation or to an alien; so that whenever the state waives its objection to it, that is an end of the discussion. But under the former view the devise is void only as to the excess; it is good up to the statutory limit, though there may be difficulty in determining that limit. Moreover under this doctrine an act of the legislature passed subsequently to the death of the testator, enlarging the power of the corporation to take, will not affect the rights of the heirs, because the title vests in them instantly on the death of the testator, and it is not competent for the legislature to divest it." Thomp. Corp. § 5787.

The author, in section 6033, characterized the question as follows: "These considerations bring us to the somewhat new and

growing doctrine, that whether a corporation has acted in excess of its granted powers or in the face of an expressed or implied statutory prohibition, is one which cannot be raised in litigation between it and a private party or between private parties, but can only be raised by the state in a direct proceeding, either to forfeit the franchises of the corporation or to subject it to punishment for doing the unlawful act." Other extracts from Mr. Thompson's book could be profitably added hereto, if it were reasonable to usurp so much space.

The complainants quote a part of a section from the same author, as follows : "This principle [ that the state alone can interfere ] has no application where the corporation is seeking the aid of a court of justice to enable it to acquire lands which it has no power to acquire and hold. Here the principle is that a court of justice will not aid a corporation to do that which is impliedly forbidden by its charter or by the law." This might be misleading if read without the omitted portion of the section, which is as follows : "It has, for instance, no application to a case where a suit in equity is brought to compel the specific performance of a contract to convey land to a railroad company, which the latter has attempted to acquire, not for any purpose connected with the building and operating of its road, but merely for speculative purposes. In such a case the specific performance was refused on the ground, among others, that the company had no power under its charter to take and hold land for such purposes." It is evident enough from the omitted extract, as well as from the citation in the note to the section that the meaning of the author is not inconsistent with his avowals in other sections of the work. The section applies to cases when a corporation has no power to be exercised and not merely where it exercises an excess of power of the same kind as that authorized by its charter. See, on this point, *Case* v. *Kelly*, 133 U. S. 21.

The complainants quote in their brief an article in the Harvard Law Review (January, 1896,) in which the writer, who was said at the argument by counsel for complainants to be a recent graduate of Harvard Law School, favors upon the admittedly doubtful

question, the view taken in the *McGraw* case and not that adopted by the United States Supreme Court. But the writer makes no allusion to the fact that the opinion in his favorite case was based on certain stringent statutes of New York affecting the testamentary capacity of the testator to give, as well as upon the lack of ability in the donee to receive, while a different question was presented in *Jones* v. *Habersham,* supra, in which Mr. Justice Gray wrote the opinion. The writer also asserts that the latter case received but slight consideration at the hands of the court, he evidently not being aware that the same case was first deliberately considered and decided by the circuit court where Bradley, J. of the Supreme Court, delivered the opinion, Gray, J., stating that fact in the first line of his own opinion. The complainants also cite a bare remark in Bigelow's edition of Jarman on Wills, in note on page 63 of 6th edition, in which the editor seems to regard the doctrine that such a gift is invalid as the better doctrine.

But that learned author, in his brief note on the subject, takes no notice of the distinction between a want of testamentary capacity to give and a mere lack of authority in the corporation to take.

Taking now a retrospective glance at the cases and authorities on both sides which we have noticed in the foregoing pages, we feel impressed with the correctness of the statement of STROUT, J. at the hearing of this case below, that the decided weight of authority is in favor of these respondents on this "new and growing question" as the author Thompson expresses it. Upon closing his discussion of the direct cases cited on his opening brief, the learned counsel for the complainants says: "But if the decisions of New York are claimed to rest upon the provisions of special New York statutes, what has the counsel to say as to all the other cases cited by the plaintiffs from North Carolina, from Kentucky, from New Jersey, and from Rhode Island?" We have substantially, according to our view answered the question ourselves by saying that the force of the opinion of the two judges in the North Carolina case is much lessened by the able minority opinion of the chief justice in the case and by the fact that the majority opinion yields the

question as to devises of real estate; that the Kentucky case is a better authority for the respondents than for the complainants; that it is not sure that the complainants have any support in the New Jersey case outside of that contributed by the chief justice in his opinion; and that the Rhode Island case evidently follows the decisions in New York. How little authority then have the complainants to rely on outside of the McGraw case in New York? We have no reason to doubt the correctness of the result of the decision in that case as based upon exceptional statutes in that state not existing elsewhere. And, should we undertake any criticism of that opinion, it would be that while the case was decided upon the statutory policy of that state, the opinion endeavors to bend into line with its policy, the policy of other states where no such peculiar conditions are found to exist.

The counsel for the complainants have very critically reviewed the cases cited against them, and in some respects, as seems to us, upon purely theoretical rather than practical grounds. Their argument would sweep away much of the more direct authority, and all of the auxiliary cases as about worthless. This is too extreme. Of course, the cases of each class are not entirely alike, and may be of various degrees of force as authorities. But they all go to illustrate as well as to bring out the underlying principle on which a settlement of the case before us depends, and most or many of them are enough alike in support of the principle involved as to be regarded as leaves from the same tree.

The counsel rebel against regarding the National Bank cases as fitting precedents in support of the question here, but they are so regarded in some cases and by some authors, which shows how other minds than ours are influenced by them. So the counsel protest just as strongly against the alien cases as being of any importance as authority. But that class of cases is constantly cited in the books as supporting by analogy such a position as the respondents stand upon here. Deeds to aliens may not be of principal importance, but it seems to us that devises to aliens, which are good at common law, are clearly cases in point and of more consequence as precedents than any other analogous authority. Does

not the will containing a devise to an alien have to be approved with the same formalities as are required of the will of the present testator, and is the land devised any more in the possession of the devisee in the one case than in the other? It is argued in behalf of complainants that there is this distinction between an alien as devisee and a corporation as such; that in the case of an alien the disability is personal and does not attach until proved by some direct and not collateral proceeding, as bankruptcy must be proved in the case of a bankrupt or as felony must be proved in the case of a felon, before the full consequences of such a condition fall upon them. There must be a conviction. Is not that the very contention of the respondents here? What is there in this will which should lead a court to establish any illegality except by a direct proceeding for the purpose? And why should the law be any more generous to a bankrupt or a felon in the dispensation of its favors than to a charitable association? At common law, and by the statute law of some of the states, an alien can take real *estate by devise and hold the same until office found to take it away from him. It is also argued for the complainants that executory contracts of an illegal nature where the illegality is participated in by both parties cannot be enforced by one party against the other, the parties being equally in fault. That principle is not applicable here. The executors and the corporation are not parties contending against each other. They are on the same side of this suit. It is admitted by the corporation that it would be a transgression of the law of its organization to accept the bequests unless the state actively or passively consents to it, and its silence is its consent. But what wrong has the testator committed by his act? The only contract that can be pertinently discussed here is that between the state and the corporation, and the state can do no wrong.

A few of the more important propositions pertinent to the case may, in conclusion, be briefly re-stated as these: That there is no restraining clause in our statute of wills preventing the testator from making these devises and bequests; that they are regular and valid on their face, nothing in the will indicating that the corpora-

tion might not be a competent trustee to administer the gifts ; that the testator had no suspicion that there would be any question over the provisions of his will; that, if the bequests fail, it will be an accident caused by a mistake of the testator respecting a fact or as to the legal construction of such fact ; that the same bequests (and devises) could have been safely made to almost any individual or to any one of many charitable corporations in the state instead of to this corporation ; that there is a very narrow difference, if there be any, between selecting this institution and selecting any other suitable trustee for the execution of the trusts committed to it, such a corporation as this being merely a technical and metaphysical entity through which the benefit of the trusts were to go to poor persons suffering from certain diseases ; that the heirs could have no voice or interest in the matter, unless accidentally so through the innocent mistake of the testator, they having no lien on the estate of either a legal or moral kind; that there are no words in the charter of the corporation, or in the statute authorizing its organization, that forbids its holding more than the amount limited by the statute, nor any penalties attached whereby to punish any transgression of the limitation, the only punishment intended being the risk of a forfeiture of the bequests, or of the charter ; that the limitation is chiefly directory and regulative, and, if impliedly prohibitory, incidentally and mildly so ; that the charter is a contract between the corporation and the state in which no person is legally interested but the parties thereto, the same general rules of interpretation applying as in other contracts ; that if the corporation fails to keep its side of the contract the state can take advantage of the default or not as it pleases; that the transgression may be so slight in its consequences that the state will forgive the offense, or forgive it because occasioned by some accident or error resulting while the corporation is acting in good faith, or the state may, acting through its prosecuting officers, punish the offense for the public good; that the state may by its legislature authorize the corporation to increase its capital before the act is done, or, if the increase be made without authority, may ratify the act afterwards either by some

legislative provision or, as may be done between any other contracting parties, by its silence and any other acts indicating consent; that from the foregoing propositions it is clearly deducible that bequests like the present are voidable only, and may be avoided by the state alone, and are in no sense to be regarded as void; that a policy arose as to what better be done in the circumstances of each particular case, and that that policy belongs to the state and not to the court and is an executive and not a judicial right, for the court would decide the question in the case for all cases and all time, while the state may decide the question differently at different times according to its discretion and the public good. This right the state has never surrendered and the court cannot take it from the state. But it would surely deprive the state of its privilege if the court fails to act upon these bequests as valid bequests until, in proper and independent proceedings, such bequests are declared to be void.

This conclusion renders it unnecessary and inexpedient to discuss the further contention of the respondents that the bequests are valid in equity if not at law, upon the maxim that no legal trust of a charitable nature shall fail for want of a competent trustee, and that if this corporation cannot act some other party may be appointed by the court that can.

*Exceptions overruled.*

*Appeal dismissed, and decree below affirmed.*